**UNITED STATES v. HOTCHKISS et al.**

No. 20615.

District Court, D. Maryland.

May 3, 1945.

Bernard J. Flynn, U. S. Atty., and Thomas J. Kenney, Asst. U. S. Atty., both of Baltimore, Md., for plaintiff.

Leon I. Kappelman, of Baltimore, Md., for defendants.

CHESNUT, District Judge.

In this case the defendants were indicted for (1) having in possession and control a 75-gallon unregistered distilling apparatus; (2) carrying on the business of a distiller

in spirits with intent to defraud the United States of the tax thereon and (3) making and fermenting mash, to wit, 240 gallons of fruit mash, fit for distillation for the production of spirits on premises which were not a distillery duly authorized according to law. These offenses are classed as felonies. The defendants filed a motion to suppress the evidence with respect to the search and seizure of the "still" and certain other physical evidence. From the evidence submitted at the hearing on the motion, I find the following facts:

On or about Saturday, March 17, 1945, a police officer of the State of Maryland in Howard County, Maryland, received what he considered reliable information that there was an illegal "still" situated on certain farm premises in the county district of Howard County in possession of the defendant, Hotchkiss. He communicated this information to the federal agents of the Alcohol Tax Unit and on the following Monday evening the state and federal officers went to this farm to investigate. The defendant Hotchkiss had leased the whole farm of about 300 acres from the owner by a written lease dated a day or two previously, but there was some evidence to the effect that he had been in possession of the property for some weeks theretofore. The dwelling house on this farm is situated about half a mile from the public road. There are several outbuildings on the property near the dwelling house incidental to the farm. The officers did not have a search warrant as their investigation was based only on information. They entered the farm property from the public road about 9 p. m., and went to the vicinity of the dwelling house and outbuildings. The dwelling house was entirely dark and apparently unoccupied at the time. After walking around various buildings the agents detected what they identified as the odor of fermenting cider mash in a small out-building, referred to as a smoke-house, about 75 feet from the dwelling house. The door to the smoke-house was securely padlocked. They made no effort to enter the smoke-house. They concealed themselves in the rear of the building and awaited further developments as they anticipated very probably some one would visit the premises during the evening.

Shortly thereafter they noticed an automobile enter the premises from which three men, two colored men and one white man,

got out and one of them went to the dwelling house but did not enter, and then came back to the smoke-house. One of the three men broke the padlock on the door and all three entered the smoke-house. The officers then made their presence known, stated they were federal officers and ordered the men to come out. When the door was opened the odor of the mash was plainly distinct. The men were then arrested. They, or one of them, stated that there was a still in the smoke-house and on entering it the officers found the 75-gallon still not then in operation, and a considerable quantity of cider mash fit for distillation, and incidents of a still which had been operated or was ready for operation. The three men denied any personal connection with the still and one of them stated that the only purpose of their visit was to get a drink of the cider which one of them knew was there because a week or so previously he had been there and had been given a drink by Hotchkiss.

Shortly thereafter another automobile came into the premises, containing Hotchkiss and his wife, and the defendant Case and another young woman. Hotchkiss and Case were then also arrested. Hotchkiss as a witness at the hearing testified that the still did not belong to him and that, although he was aware that it was in the smoke-house, he intended to have it removed as soon as he took possession of the farm as tenant. He said that the only purpose of his visit that night was to bring Case to the farm as the latter was to manage it for him. He made no complaint at the time of the search and seizure by the agents.

The question that arises on the motion to suppress the evidence is whether in all the circumstances the search and seizure of the still and the evidence of the agents with regard to it, should be suppressed on the ground that it constituted an *unreasonable* search and seizure under the 4th Amendment to the Federal Constitution which provides: "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

What constitutes an unreasonable search and seizure depends upon the particular facts and circumstances of the case. In recent years, both during and subsequent to National Prohibition, there

have been many adjudicated cases upon the subject. The principles to be applied in determining the question have been frequently stated by the Supreme Court of the United States, by the Circuit Court of Appeals for this Circuit, and in opinions of this District Court. Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409; Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951; Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159; and Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898; Benton v. United States, 4 Cir., 28 F.2d 695; DePater v. United States, 4 Cir., 34 F.2d 275, 74 A.L.R. 1413; Paper v. United States, 4 Cir., 53 F.2d 184; United States v. Sam Chin, D.C.Md., 24 F.Supp. 14; United States v. Lerner, D.C. Md., 35 F.Supp. 271; United States v. Seiler, D.C.Md., 40 F.Supp. 895. In a very recent case of this nature, In re Ginsburg, 2 Cir., 147 F.2d 749, 750, it was succinctly and aptly said by Circuit Judge Hutcheson: "It remains true, however, that each case of this kind is a fact case. The correct decision of each depends not so much upon a higher critical examination of the accumulated decisional gloss as upon a common sense determination of whether, within the meaning of the word the Constitution uses, the particular search and seizure has been 'unreasonable,' that is, whether what was done and found bears a reasonable relation to the authority then possessed and exercised or transcends it to become oppression."

▮ Applying the principles to the particular facts of the instant case, I reach the conclusion that the motion must be overruled. The agents were not unlawfully on the premises because as officers of the law it was clearly their duty to go there to inquire regarding the truth of the information which they had. Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898; United States v. Feldman, 3 Cir., 104 F.2d 255; certiorari denied 308 U.S. 579, 60 S.Ct. 97, 84 L.Ed. 485; United States v. McBride, 5 Cir., 284 F. 416, certiorari denied 261 U.S. 614, 43 S.Ct. 359, 67 L.Ed. 827; Wida v. United States, 8 Cir., 52 F.2d 424. Upon arriving on the premises the agents, by the sense of smell, noted what seemed to them a probable violation of the law, but they did not consider that of itself, even with the information they had received, was sufficient to justify them in entering the smoke-house to make a search for the suspected still. I think they acted correctly in this regard although it is probable that what they observed would have justified the issuance of a search warrant. Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951; United States v. Kaplan, 2 Cir., 89 F.2d 869. But after the three men came upon the premises and opened the door of the smoke-house under the circumstances stated, there was reasonable basis for the arrest of these men on the probable ground that they were committing or intending to commit a felony in the presence of the officers. And the subsequent entry and search of the smoke-house by the officers was a natural incident of the lawful arrest. Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409; United States v. Feldman, 3 Cir., 104 F.2d 255; United States v. Sam Chin, D.C.Md., 24 F.Supp. 14, 17.

▮ To justify a search made after an arrest, there must have been probable cause for the arrest. If the arrest was not on probable cause but merely a pretext for making the search, the latter is unreasonable. In this case I think the officers had probable cause for making the arrest. They had not only the evidence based on the sense of smell, but in addition thereto the unusual circumstance of three men at nighttime visiting a then unoccupied farm premises and breaking into the out-building where the agents had detected the presence of the suspected still. While the sense of smell alone in this case was not self-sufficient to justify entry and search, in the absence of any one reasonably suspected of committing a crime, the presence of the men in relation to the smoke-house in all the circumstances made the arrest valid. The importance of the alcoholic odor observed by the agents in a case of this kind varies with the nature and circumstances of the particular case. It also depends largely upon the nature of the crime thought to be occurring. The odor of whiskey is not of itself probable cause to suspect the commission of the crime of possession of untax paid liquor. And under the National Prohibition Act, now repealed, the mere odor of whiskey mash emanating from a dwelling house was not sufficient cause for search because by the applicable statute, 27 U.S.C.A. § 39, it was provided, "No search warrant shall issue to

search any private dwelling occupied as such *unless it is being used for* the unlawful sale of intoxicating liquor, * * *." (Italics supplied.) United States v. Seiler, D.C., 40 F.Supp. 895, 896. But in the instant case what the agents suspected was the possession of an illegal still with mash fit for distillation in a smoke-house where there could be no reasonable likelihood that the still was duly registered. It may also be assumed that the smoke-house was technically within the "curtilage". Even if the still and the odor emanating therefrom had been situated in the dwelling house and the three men had entered the latter, I think the arrest and entry under the circumstances would have been lawful. In judging these cases, what constitutes probable cause must be determined from the standpoint of the arresting officer with his skill and knowledge, rather than from the standpoint of the average citizen under similar circumstances. United States v. Sebo, 7 Cir., 101 F.2d 889, 890; United States v. Murray, D.C.Md., 51 F.2d 516, 519.

When the defendant Hotchkiss arrived on the premises and was questioned by the officers, he stated that the three men who had been arrested had no connection with the still and it appears that they were subsequently dismissed at the hearing before the United States Commissioner. On this, counsel for the defendants argues that they were purely trespassers and by reason of their activities the officers did not obtain any greater authority for the entry and search of the smoke-house than if these three men had not intervened upon the scene. I think it is true that if the validity of the search had been based on the supposed permission or consent of the defendant Hotchkiss, this consent could not validly have been given by mere trespassers. United States v. Kaplan, supra; United States v. Ruffner, D.C.Md., 51 F.2d 579, 580. But when the three men were arrested the officers did not know or believe that they were merely trespassers. From the circumstances the officers naturally inferred that the entry of the three men into the smoke-house was for the operation of the still. The circumstances afforded probable cause for their arrest and their entry and search was a proper incident of the arrest. It is true that these men promptly thereafter repudiated any illegal connection with the still, but in the circumstances the officers were not required to accept this statement, even when confirmed by the later statement of Hotchkiss, and until the men were dismissed by the Commissioner. As the arrest was for probable cause and the officers were therefore justified in entering the building, their discovery of the still did not constitute an unreasonable search. Paper v. United States, 4 Cir., 53 F.2d 184.

For these reasons I conclude that the motion to suppress the evidence must be overruled. With regard to the defendant Case, there is a further reason for the conclusion. It does not appear from the motion to suppress nor from the evidence at the hearing that Case had any proprietary interest in the premises. As to the defendant Hotchkiss, it may also be observed that, as he has repudiated any possessary interest in the still and the incidental apparatus, and denies any connection with it except that he had intended to have it removed, it is at least doubtful whether he has a proper standing to challenge the seizure of the still by the officers of the law. Kitt v. United States, 4 Cir., 132 F.2d 920, 921; Shields v. United States, 58 App.D.C. 215, 26 F.2d 993, certiorari denied 278 U.S. 633, 49 S.Ct. 31, 73 L.Ed. 550; Matthews v. Correa, 2 Cir., 135 F.2d 534.