Argued March 8, affirmed June 27, 1962

# STATE OF OREGON *v.* CHINN
### 373 P. 2d 392

*James M. Hafey,* Portland, argued the cause for appellant. On the brief was Vincent Ierulli, Portland.

*Charles R. Harvey,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was Charles E. Raymond, District Attorney, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

GOODWIN, J.

This is an appeal from a conviction under ORS 163.210 (1) (statutory rape). The question is whether certain evidence should have been suppressed upon the timely motion of the defendant.

The challenged evidence was seized under the following circumstances :[1]

---

[1] While some of the facts are disputed, as will be seen, there was no substantial controversy on the facts which appear to be material. In those particulars in which the testimony of the defendant contradicts that of the police, the defendant's version of

Some time during the day of October 2, 1960, a twelve-year-old girl was reported missing. Upon her return to her mother the next day, she said she had been taken to a given address in Portland and there subjected to sexual abuse by a man known only as "Ray". The child next described the events to the city police. An officer thereupon obtained a warrant for the arrest of "John Doe, whose true name is unknown, @ Ray." No search warrant was sought or obtained. The officer then proceeded to the reported address. Finding no one at home, he kept the apartment under surveillance from about 2:00 p.m. until about 6:00 p.m. Shortly after 6:00 p.m., the officer was joined by another officer. (Police practice was to work in pairs after dark.) After about twenty minutes of waiting together, the officers saw two men enter the apartment. The officers thereupon knocked on the door and were admitted. The occupants of the apartment informed the officers that neither of them was "Ray", but that "Ray" would be along shortly.

There is some dispute whether the officers were invited to examine the apartment.[2] In any event, the officers entered and proceeded to look in the kitchen, bathroom, bedroom, and living room.

---

the facts may be accepted without changing the legal effect thereof. The difficulty which arises in determining the facts in cases of this character could, for the most part, be eliminated if the trial judge would make findings of fact on all contested evidence underlying his ruling upon the reasonableness of a seizure in a given case.

[2] In the lower court the state urged in part that the search was founded on the consent of one of the tenants of the apartment. See State v. Broadhurst, 184 Or 178, 251, 196 P2d 407 (1948). The trial court, as noted, made no findings. As the element of consent is the only fact in substantial dispute, however, and as that element is immaterial in this case, we can treat the lack of findings as non-prejudicial.

During their tour of the apartment, the officers were looking for the defendant. Although they observed various objects, they took no steps to reduce anything to their possession. The girl having reported that she had been given beer, and that "Ray" had taken her picture, the officers asked their temporary hosts if "Ray" had a camera. They were told that he had one. A camera was visible on a shelf in "Ray's" room and a "six-pack" of empty bottles was on the floor. The officers looked in a closet and observed some bed sheets. When they were satisfied that "Ray" was indeed not at home, the officers sat down to watch television and wait for his return.

When the man answering to the name of "Ray" entered the apartment, he was immediately placed under arrest. The officers at that time proceeded to gather up the objects which they had noticed earlier in the evening. These objects included the empty beer bottles, the camera, and the bed linen. Some of the bottles later were found to be covered with the fingerprints of the prosecutrix. The camera contained undeveloped film which, upon being developed, showed the prosecutrix in the defendant's bed. The linen contained substances of interest to the prosecution in such cases.

There had been no ransacking of the premises, no rummaging in drawers or desks. The record does not show whether the closet in which the sheets were found was large enough to contain a person. In any event, the officers, having remarked the location within the defendant's apartment of various items that they considered to be significant, simply gathered them up along with the defendant. The facts, then, are relatively uncomplicated and, as noted, substantially free from dispute.

■ We need not consider the effect of the invitation, if any, in this case, as the entry was privileged in any event. Both at common law and by statute, officers are entitled to enter where necessary in order to make a lawful arrest for a known felony. ORS 133.320. *State v. Duffy et al.,* 135 Or 290, 298, 295 P 953. Restatement, Torts § 206. The presence of the officers in the apartment was lawful. The issue in this case is the legality of the search for and seizure of the challenged evidence.

Oregon Constitution, Art I, § 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but on probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

■ We begin, then, with a constitution that protects the home against invasion by the police unless the police first have procured a search warrant. Magistrates, rather than police officers, are to decide when, and to what extent, the privacy of the home is to be disturbed. See *United States v. Lefkowitz,* 285 US 452, 454, 52 S Ct 420, 76 L Ed 877, 82 ALR 775 (1932), construing the parallel language of the federal Constitution.

■ We have previously observed that evidence illegally obtained by police officers may not be used by the state in a criminal prosecution. *State v. Hoover,* 219 Or 288, 295, 347 P2d 69 (1959); and see *Mapp v. Ohio,* 367 US 643, 81 S Ct 1684, 6 L Ed2d 1081 (1961). An unlawful search is not made lawful by the evidence of crime which it brings to light. See, e.g., *Byars v.*

*United States,* 273 US 28, 47 S Ct 248, 71 L Ed 520 (1927).

The notable exception to the demand for a search warrant is, of course, the search made as an incident of a lawful arrest. *State v. Randolph,* 222 Or 389, 353 P2d 238 (1960); *State v. Hoover,* supra; and see *Marron v. United States,* 275 US 192, 48 S Ct 74, 72 L Ed 231 (1927). Only if there is a lawful arrest, however, does this exception apply.

In general, a mere exploratory search accompanied by an arrest upon some convenient charge is held bad. See *Collins v. United States,* 289 F2d 129 (5th Cir. 1961). See, also, *The People v. Watkins,* 19 Ill2d 11, 166 NE2d 433 (1960); *Johnson v. United States,* 333 US 10, 68 S Ct 367, 92 L Ed 436 (1948); *United States v. Lefkowitz,* supra; *Go-Bart Co. v. United States,* 282 US 344, 51 S Ct 153, 75 L Ed 374 (1931); 1 Varon, Searches, Seizures & Immunities 201 (1961).

On the other hand, if there is a *bona fide* arrest for a known offense, and the officers make the search as a true incident of the arrest rather than as an effort to discover some grounds for an arrest, then a fairly intensive search may be reasonable, depending upon all the facts of the case. See *United States v. Rabinowitz,* 339 US 56, 63, 70 S Ct 430, 94 L Ed 653 (1950); *Go-Bart Co. v. United States,* supra.

Inasmuch as we believe that certain federal cases under the Fourth Amendment are instructive, at least upon the matter of reasonableness, we have noted, and shall continue to refer to federal cases in outlining some general principles[9] which apply equally under our own constitution:

■ (1) *Purpose of the arrest exception.* Search and

---

[9] See Comment, 45 J Crim L, Crim and Police Sci, 51, 59 (1954).

seizure contemporaneously with an arrest is the only exception to the constitutional requirement of a warrant prior to a search of one's home. The exception is necessary to secure the safety of the police and the custody of the prisoner. See *Abel v. United States,* 362 US 217, 80 S Ct 683, 4 L Ed2d 668 (1960). It is also necessary to enable enforcement officers to gather the fruits of the crime, the implements thereof, and possibly to prevent the destruction of evidence thereof. See *United States v. Kirschenblatt,* 16 F2d 202, 51 ALR 416 (2d Cir. 1926, Hand, J.), and *Weeks v. United States,* 232 US 383, 392, 34 S Ct 341, 58 L Ed 652, LRA 1915B 834 (1914). Properly employed, the exception is limited by the purposes for which it has been developed.

■ (2) *Additional limitations.* There are other limitations intended to prevent the exception from becoming the rule. The search must be an incident of the arrest, i.e., close to the arrest both in time and in space, viz., in the physical area searched. The only practical test for reasonableness in relation to time and space is to examine the total factual situation in the light of the constitutional right of privacy. We shall discuss time and space in some detail as we consider the facts of the case at bar.

■ (3) *Intensity of the search.* Even if a search is reasonable with reference to time and space, it may be held unreasonable if it is of undue intensity. The nature of the crime for which an arrest is made and the character of the articles seized should have a direct bearing upon the question of reasonableness.[④] So,

---

[④] Jackson, J., dissenting in Brinegar v. United States, 338 US 160, 183, 69 S Ct 1302, 93 L Ed 1879 (1949):
"* * * If we assume, for example, that a child is kidnaped and the officers throw a roadblock about the neighborhood and

also, should the knowledge the police may have of the criminal record and habits of the suspect, if relevant under the facts of a given case. Thus, a search in connection with an arrest of an ex-convict for a murder may properly exceed the allowable intensity of a search in connection with a traffic offense. Ordinarily, the seized articles must be in plain view, or, if not, then within the immediate control of the prisoner and accessible without unreasonable exploring, rummaging or ransacking. (However, in an exceptional case, even a rather thorough ransacking was upheld in *Abel v. United States,* supra.)

(4) *Opportunity to obtain a search warrant.* Running through a number of cases, in a manner which makes it difficult to discern whether the court was talking about the reasonableness of the search or the legality of the seizure, or both, is a principle that a search might be held unreasonable if the officers had had ample opportunity to consult a magistrate and obtain a search warrant but failed to do so. See, e.g., *Chapman v. United States,* 365 US 610, 81 S Ct 776, 5 L Ed2d 828 (1961), and cases discussed therein.[9]

search every outgoing car, it would be a drastic and undiscriminating use of the search. The officers might be unable to show probable cause for searching any particular car. However, I should candidly strive hard to sustain such an action, executed fairly and in good faith, because it might be reasonable to subject travelers to that indignity if it was the only way to save a threatened life and detect a vicious crime. But I should not strain to sustain such a roadblock and universal search to salvage a few bottles of bourbon and catch a bootlegger."

[9] In some of these cases the search was invalid because it was exploratory, rather than incidental to an arrest. In McDonald v. United States, 335 US 451, 69 S Ct 191, 93 L Ed 153 (1948), the police had kept a suspect under surveillance for two months. They finally entered his house without a warrant when they thought they heard an adding machine in operation. After searching other

(5) *Articles subject to seizure.* Assuming that a given search was a lawful incident of an arrest, not unreasonable with reference to time or space, and not disproportionately rigorous in the context of the crime, the suspect, and all the surrounding circumstances, the next inquiry has to do with the "seizability" of objects discovered in such a search. Not all personal property is subject to seizure by police. As it is this last point which presents the principal issue in the case at bar, it will be discussed in some detail below.

With the foregoing general principles in mind, we return to the facts of the case before us.

## I. THE SEARCH

■ There is no doubt that the search of the defendant's apartment was lawful. There was a lawful entry made for the purpose of effecting the arrest of a known felon for a known felony, and the arrest was, in fact, accomplished. There is no suggestion that an exploratory search was under way. The police knew whom they wanted and why they wanted him, even though they did not know his last name when they set out upon their mission. There was probable cause to make the arrest, independent of any evidence turned up in the search. In such a case, all the authorities agree that a reasonable examination of the premises under the immediate control of the defendant at the time of

---

rooms in vain, an officer looked through a transom into a bedroom and saw the paraphernalia of an illicit numbers operation. Thereupon an arrest was made and the evidence of the illegal activity was gathered by the police. See, also, Johnson v. United States, 333 US 10, supra, where officers smelled opium, then entered the room and searched for evidence of illegal possession of the drug. Upon finding such evidence, they made an arrest which they would have had no reason to make if they had not found the incriminating evidence.

the arrest is a lawful incident of the arrest. Beyond this point, however, there is a diversity of opinion.

## A. *Reasonableness as to Time*

One matter in controversy is whether the officers must go through the motions of an actual arrest before they can legally observe environmental objects at the site of the arrest. When the search is not an exploratory one, there is no reason to hold it unreasonable simply because it may have preceded the arrest. Common sense rather than mechanical formality should guide police officers in the course of their duty. In the case at bar, the officers had not been furnished a dependable itinerary for their suspect, and had no idea when or where he might appear. They were not obliged to shut their eyes when told that their suspect was not at home. It was the duty of the officers to make certain. The fact that they observed certain objects which later turned out to have evidentiary value certainly did not make their examination of the area unlawful. If officers enter a house in response to a scream, they need not close their eyes to a smoking pistol or a dead body on the floor, even if the culprit has just left the premises, making it impossible to effect his arrest at that time.

In the case at bar, it matters not that some hours went by between the officers' admission to the apartment and the arrest. This fact might be significant if the officers had known that they were going to have as much free time on their hands as it turned out that they had, but, so far as the officers knew, the defendant could have returned at any minute. He was expected to do so, and the officers had been so informed by the defendant's companions. There is noth-

ing unreasonable about the fact that the officers saw what they saw before, rather than after, they had accomplished the arrest of the suspect.

A number of state and federal cases may be cited for the proposition, rejected in *State v. Hoover,* supra, that a formal arrest must be made before the officers may lawfully observe any property. Such a rule was no doubt designed to prevent exploratory searches, which we agree are lawless and will infect any evidence seized thereby. But the rule should not be carried to the extremes advocated by the defendant. Exploratory searches can be controlled by less drastic action. If the police may not look at visible objects or glance around the room until after they have arrested the accused, then law enforcement has been turned into some sort of a game. We think the essential point is whether the police have made an unlawful exploratory search, or incidentally, and reasonably, have observed evidence found while on the premises to make the arrest.

## B. *Reasonableness as to Space*

A related consideration is the reasonableness of the area searched. When the officers inspected the rooms they had no reason to know that the defendant was not lurking in one of them, and armed, or poised for flight. Further, the officers might have been confronted by intervention by others at any time. In the course of their dangerous duty, police officers are entitled to look to their own security and to make reasonable efforts to check upon the veracity of a suspect's friends or relatives who say he is not at home. They are entitled to take notice of the kind of people with whom they are dealing. There was nothing about

the area examined by the officers which made their examination unreasonable. See *Harris v. United States,* 331 US 145, 67 S Ct 1098, 91 L Ed 1399 (1947), which upheld a five-hour examination of every room in a house following an arrest for forgery.

## C. *Intensity of Search*

■ In the case at bar, the camera and beer bottles were in plain sight in a room which was under the control of the defendant. The sheets were in the bedroom closet. Looking in the closet can not be characterized as unreasonable under the facts of this case. In *United States v. Rabinowitz,* 339 US 56, supra, the officers searched only one room, but their search was thorough and painstaking. It included a desk, a safe, and a file cabinet, all without a search warrant, but incidental to an arrest.

## D. *Opportunity to Obtain a Warrant*

■ It is true that the officers in this case may have had adequate time in which to obtain a search warrant. (They did obtain an arrest warrant.) Admitting that a search warrant might have been sought,[6] the failure to obtain the warrant does not necessarily render the evidence inadmissible. *United States v. Rabinowitz,* 339 US 56, supra, and *Harris v. United States,* 331 US 145, supra.[7] How much the officers

[6] On this point, the state did not admit that a warrant could have been obtained, but, on the contrary, argued that ORS 141.010 does not authorize the issuance of a warrant in cases of this character.

[7] Compare Trupiano v. United States, 334 US 699, 68 S Ct 1229, 92 L Ed 1663 (1948), where everything about the arrest was fair and regular, but the seizure of contraband liquor in open view was held bad for want of a search warrant. *Trupiano* was overruled in the *Rabinowitz* case, and the *Harris* rule apparently

knew about the presence in the apartment of personal property used in the commission of the crime before they set out on their errand is problematical. The crime was well enough established to support an arrest, but the officers were not necessarily prepared to swear out a search warrant. Certainly we cannot say from the record before us that the officers should, on the basis of a most fragmentary description, have guessed, at their peril, what property might be found. A contrary ruling might serve to immunize other valid evidence described imperfectly or not at all. See *Marron v. United States,* 275 US 192, supra. We cannot say the failure to obtain a search warrant rendered the search or the seizure unreasonable. If the mere failure to obtain a search warrant makes every search and seizure illegal even though a perfectly reasonable accompaniment of a lawful arrest, then the word "unreasonable" has been read out of the constitution.[®]

█ The proper test of a reasonable search is, as we have noted, based upon the entire factual situation. Was the search close both in time and space to the arrest? Furthermore, was the intensity of the search commensurate both with the crime and what was known of the criminal? Finally, there is the question of the causal relationship between the arrest and the search. In each case, the trial judge must determine whether the officers went to the place to make a lawful arrest, and in making it looked for evidence law-

---

prevails again in the federal system. See Abel v. United States, 362 US 217, supra, an espionage case which cited *Harris,* but relied upon a purported difference between an "administrative" arrest and a criminal arrest.

[®] For a discussion of the relationship between the reasonableness clause and the warrant clause of the Fourth Amendment, see *Search and Seizure in The Supreme Court: Shadows on the Fourth Amendment,* 28 Chi L Rev 664, 678 (1961).

fully subject to seizure, or whether the officers used a pretended arrest for one offense as a Trojan horse in order to obtain entry, only to prosecute for some greater crime after finding sufficient evidence to justify their belief in the defendant's probable guilt of the greater crime. The first kind of search is incidental to an arrest and is lawful; the second is a fishing expedition and is as odious as the general warrant of antiquity. As we have seen, the arrest and the search we have before us were of the legitimate variety.

## II. SEIZURE

■ We hold that the limits of reasonableness placed upon the search, and which we have discussed above, are equally applicable to seizures. Conversely, objects observed during a search reasonable as to space, time, and intensity may legitimately be seized provided that seizure is not prohibited by some other rule of law. We turn, then, to a consideration of the final problem presented by the facts of this case: Although the search was, as noted above, reasonable and proper, was the seizure of the camera, the beer bottles and the bed sheets infected by some vice which requires us to exclude these items as evidence?

### A. *Articles Subject to Seizure—Contraband, Documents*

The articles seized in the case at bar are not contraband, and the vast array of state and federal authorities justifying seizure of stills, mash, narcotics, and gambling paraphernalia is of no appreciable help in a rape case. See, e.g., *Draper v. United States,* 358

US 307, 79 S Ct 329, 3 L Ed 327 (1959) (narcotics).
Nor can we gain much enlightenment from cases which
discuss the seizure of documents having to do with
the currency, revenue, ration stamps, selective service,
and kindred matters of federal concern. Cf. *Harris
v. United States,* 331 US 145, supra, a selective-
service violation, and *Gouled v. United States,* 255
US 298, 41 S Ct 261, 65 L Ed 647 (1921), a conspiracy
to defraud the government.[9] The case before us is
likewise to be distinguished from the great leading
decision on incriminating documents, *Boyd v. United
States,* 116 US 616, 6 S Ct 524, 29 L Ed 746 (1886),
and the cases following it, in which the privacy of
one's personal papers is protected by both the Fourth
and the Fifth Amendments against unreasonable
seizure. See Annotation, 129 ALR 1296.

### B. *Effect of Warrant Rule upon Seizure without Warrant*

We take it as settled that evidence which law-
fully could be seized under a warrant ought also to be
seizable upon a lawful arrest without a warrant. The
converse of this proposition seems equally reasonable.
Thus, evidence which could not lawfully be seized
under a warrant should not be subject to seizure with-
out one. The foregoing proposition has been expressed
probably no better anywhere than by Judge Learned
Hand in *United States v. Kirschenblatt,* 16 F2d 202,
supra. In that case the court was dealing with papers,
but the rule there laid down would apply to all per-
sonal property. Evidence, merely as evidence, cannot
be taken upon arrest if the same evidence could not

---

[9] See Comment, 20 U Chi L Rev 319 (1953).

have been taken under a search warrant.[10] In other words, a privilege to enter the home to make an arrest does not draw after it a privilege to seize objects merely because they supply evidence of crime. *Gouled v. United States,* supra. The things seized must be things which would have been subject to the law's demand upon a proper showing before a magistrate.

## C. *Statutory Restrictions*

■ Virtually every American jurisdiction has a statute restricting the type of evidence which may be seized under a warrant. The majority of these jurisdictions have a provision similar to ORS 141.010, which reads as follows:

"A search warrant may be issued upon any of the following grounds:

"(1) When the property was stolen or embezzled.

"(2) When the property was used as the means of committing a felony.

"(3) When the property is either in the possession of a person who intends to use it as the means of committing a crime or in the possession of another to whom such person delivered it for the purpose of concealing it or preventing its being discovered."

---

[10] The so-called "mere evidence" rule does not necessarily have a Fourth-Amendment rationale. In the *Gouled* case, the court talked of the use of a person's private papers as evidence against him as a violation of the self-incrimination proscription of the Fifth Amendment. We have no occasion to pass upon such questions in this case. For a comparison of the fuzzy boundary between "mere evidence" (not subject to seizure) and implements of crime (subject to seizure) see United States v. Lefkowitz, supra, and Marron v. United States, supra. In the *Lefkowitz* case, the search was held to be exploratory and therefore bad. Perhaps this accounts for the additional language that "unoffending" property was not subject to seizure in that case. The articles seized in the two cases were virtually of the same class.

We note in passing that the Federal Rules of Criminal Procedure contain a provision (Rule 41 (b)) which is substantially similar to ORS 141.010. These statutes restrict the type of evidence which is subject to seizure within the safeguards of the search warrant. The type of evidence which may legitimately be seized extends only to property which does not belong to the possessor or whose right to possession he has forfeited in some manner recognizable under the law.[⑲] Such forfeiture may be brought on either by using or planning to use the property in the commission of a crime. The ancient property notion that the use of an object for an evil purpose renders it forfeit seems to have retained some of its force in this field, although this rationale is not without controversy.[⑳]

■ It is totally unnecessary to decide in this case whether objects other than those described in ORS 141.010 constitutionally can be made subject to seizure under a warrant. We have to work with the statute now in force. Earlier decisions of this court have suggested that evidentiary objects not covered by the search-warrant statute might be subject to seizure without a warrant where the search is made as an incident of an arrest, but the effect of ORS 141.010 upon such a seizure does not appear to have been decided. See, e.g., *State v. Broadhurst,* where part

[⑲] 1 Varon, Searches, Seizures and Immunities 219 (1961) discusses the various statutory rules. State courts do not appear to have adopted the federal rule in sufficient number to establish a trend. See cases noted in Comment, 20 U Chi L Rev, supra note 9 at 320.

[⑳] It has been suggested in some quarters that neither the privacy nor the property rationale can be the exclusive explanation of the force behind the distinction between the kinds of goods which are subject to seizure and the kinds which are not. Perhaps in this field the courts have lacked a stationary target. See discussion in 28 U Chi L Rev 664, supra note 8.

of the search was consented to, supra note 2; and *State v. Cram*, 176 Or 577, 160 P2d 283, 164 ALR 952 (1945), an involuntary blood-test question. The present statute does not authorize the seizure of property other than the fruits and implements of crime. ORS 141.010. We are concerned here, therefore, with statutory, rather than constitutional, "seizability". We express no opinion upon the permissible scope of legislation in this field.

▪ To recapitulate, the police, with or without a warrant, are limited in their seizures by the statutory grounds for a search warrant. Under a warrant, the police may seize only a limited class of property. As an incident of arrest, the officers likewise may take only objects which could have been taken under a search warrant. Thus, the seizability of the bottles, camera, and bed sheets in this case depends upon whether a warrant could have issued for their seizure.

Under ORS 141.010, the only category applicable to the case at bar is that of subsection (2), "property used as the means of committing a felony." The articles seized were used in the commission of the crime. The giving of beer to a twelve-year-old girl was, on the record in this case, instrumental in the commission of the crime denounced by ORS 163.210 (1). Some bed sheets were used in the act of intercourse. It would be a matter for the jury's determination on the entire record whether the particular sheets were used in the particular acts complained of. Likewise, the camera was in fact used during the commission of the crime charged. It is no more necessary to say the child was raped with a camera than to say a calf was stolen with a running iron. The issue is whether the instrument was used in the commission of the crime. To hold otherwise would be to prohibit the seizure of

any evidence of the crime of rape or similar crimes. The point of the statute is that only those objects actually used in the commission of a crime may be seized under subsection (2) of ORS 141.010.

Some dismay is expressed at the idea that a camera can be used in the commission of the crime of statutory rape. Since the crime ordinarily involves taking advantage of a child, however, and does not necessarily, or even ordinarily, involve force, we believe the language of this court in connection with the crime of contributing to the delinquency of a minor is instructive in this case. "The arts of seduction are so variant and insidious, especially when applied to different individuals, that it is impossible as a matter of law to lay down any rule on the subject of what will or will not invariably tend to produce delinquency in all minors * * *." *State v. Stone,* 111 Or 227, 235, 226 P2d 430 (1924).

The fact, if it is a fact, that the taking of pictures is neither common nor essential to the crime of rape is irrelevant. It is sufficient to observe that the camera was used in the debauchery of the child. There is no need to canvass the other varieties of bizarre behavior that may appeal to a diseased mind. It might be pointed out that if the crime had been forcible rape, and the victim had been bound, the binding material would be treated as property used in the commission of that crime, no matter how bizzare, in the abstract, its particular employment may appear. See *State v. Delaney,* 221 Or 620, 651, 332 P2d 71, 351 P2d 85 (1960).

We hold that ORS 141.010 (2) is broad enough to have justified a magistrate in listing the challenged articles in a search warrant if the officers had applied for a warrant. Accordingly, the articles were subject

to the law's demands, were properly found and properly seized. There was no error in receiving the evidence.

Affirmed.

O'CONNELL, J., dissenting.

The defendant's motion to suppress the evidence should have been granted.

I begin with the same premise accepted by the majority, namely, that a search and seizure incident to an arrest is not reasonable if it is more extensive than that which could be made under a valid search warrant.[1] In my opinion a valid search warrant could not have been issued for the search and seizure of the camera, the film, the beer bottles and the soiled sheet because these items of evidence do not fall within the grounds specified in ORS 141.010.[2] The only statutory condition that could possibly apply is the second, which permits a search warrant "When the property was used as the means of committing a felony." The majority states that "the use of the camera in the debauchery of the child is not so unreasonably disconnected with the commission of the crime charged as to require the exclusion of that instrument." The test is not whether the item of evidence is reasonably connected with the commission of

---

[1] United States v. Lefkowitz, 285 US 452, 52 S Ct 420, 76 L Ed 877 (1932); United States v. Thompson, 113 F2d 643 (7th Cir 1940).

[2] "ORS 141.010. A search warrant may be issued upon any of the following grounds:

"(1) When the property was stolen or embezzled.

"(2) When the property was used as the means of committing a felony.

"(3) When the property is either in the possession of a person who intends to use it as the means of committing a crime or in the possession of another to whom such person delivered it for the purpose of concealing it or preventing its being discovered."

the crime; it must be property which "was used as a means of committing" the crime. Counsel for the state, himself, concedes that "Despite the high evidentiary value of the exhibits, they do not come within the meaning of ORS 141.010, and no warrant could have been issued to search for and seize this evidence."[9]

To state as a general proposition that a camera is an instrumentality in the commission of the crime of statutory rape is quite a startling assertion and will certainly come as a surprise to the average reader. To be sure, an imaginative mind could conceive of ways in which a camera might be used as a means of enticing a female into the act charged, but there is no evidence that the camera in this case was so used, nor is there evidence that cameras are commonly used for such a purpose. A similar observation could be made with respect to the soiled sheet and the beer bottles.

The majority, sensing that the evidence of guilt is strong, indulges in a distortion of language and ideas to affirm the conviction. This is not an unusual spectacle in the law of search and seizure. The great confusion which characterizes this field can probably be traced to this very same tendency to twist out of shape the language of the statutes authorizing search in order to see that the defendant is punished. In yielding to this temptation to do justice in the particular case the majority drains away a part of the vitality of the statute as well as the constitutional principle which underlies the Fourth Amendment,

---

[9] The applicability of this statement to the soiled sheet finds support in Morrison v. United States, 262 F2d 449 (D C App 1958), where a handkerchief containing similar substances was held evidentiary and, therefore, inadmissible.

U. S. Constitution and its counterpart in Article I, § 9 of the Oregon Constitution.④

The case at bar could be decided simply upon an interpretation of our search warrant statute, ORS 141.010, the items seized not being a "means of committing" the crime charged, that is to say, an instrumentality of the crime. However, the limitations on the right of search contained in ORS 141.010–141.190 and similar statutes in other jurisdictions are undoubtedly derived from the principle upon which both our constitution and the federal constitution are based. Our interpretation of ORS 141.010 must keep within this constitutional principle whatever we may think of the need for more efficient law enforcement methods.

At first blush the narrow limits within which search may be made under the usual search warrant statute such as ORS 141.010 strikes one as being unrealistic considering the difficulties usually facing law enforcement officers in gathering evidence. But as I shall attempt to show later, these narrow limits are necessary if we are to preserve the safeguards intended by the Fourth Amendment, U. S. Constitution and Article I, § 9, Oregon Constitution.

The legislature has, in effect, said that no matter

④ This thought is expressed in United States v. Richmond, 57 F Supp 903, 907 (S D W Va 1944) where the court asks "if they [constitutional guarantees] are permitted to be infringed in order to obtain evidence against the guilty, how shall we have assurance that the innocent will not likewise suffer; since it is only after the search and seizure are made that their results can be known? * * * Courts must be vigilant to detect and check any and all invasions of the constitutional right of immunity from unreasonable searches and seizures, without regard to the indicated guilt or innocence of the person whose premises are the object of the search; otherwise, the right itself may be insidiously undermined and destroyed."

how clearly the evidence in the accused's possession would establish his guilt, the enforcement officers cannot reach it, even with a warrant, unless it is a fruit of or an instrumentality of the crime. This limit on the scope of permissible search and seizure is not expressly stated in the Fourth Amendment or in the state constitutions. Nor does the history of the law of search and seizure clearly show why these limits were drawn as they were.[5] But the cases are pretty well in agreement in regarding the right of search and seizure as narrowly limited to the circumstances already mentioned, the holdings apparently reflecting the philosophy which prompted the adoption of the Fourth Amendment and similar provisions in the various state constitutions.

Generally speaking these cases teach us that the constitutional right of privacy is protected unless the accused has no property interest in the item sought or if he does have such an interest, there are reasons, aside from the government's need for evidence, warranting the seizure of the item. Thus it is held that the fruits of the crime may be seized, apparently because the accused has no title to such property.[6] Likewise, property owned by the government or held by

[5] Lassen, History and Development of the Fourth Amendment to the United States Constitution, 13-105 (1937); Search and Seizure in the Supreme Court: Shadows on the Fourth Amendment, 28 U Chi L Rev 664, 678-679 (1961).

[6] "The search for and seizure of stolen or forfeited goods or goods liable to duties and concealed to avoid the payment thereof are totally different things from search for and seizure of a man's private books and papers * * *. In one case, the Government is entitled to the possession of the property; in the other it is not." Boyd v. United States, 116 US 616, 623, 6 S Ct 524, 528, 29 L Ed 746, 748 (1885). See, Comment, 20 U Chi L Rev 319, 323 (1953).

the accused subject to inspection is seizable.⑦ Property which is *owned by the accused* is not ordinarily subject to seizure. Where the seizure of the property of the accused is permitted it is ordinarily deemed necessary to square the result with the general immunity of private property from seizure by explaining that the accused, by engaging in unlawful conduct, forfeited his title to the property. Thus it is explained that contraband is seizable because the accused does not have a property interest in it.⑧ Similarly with property which was an instrumentality of the crime.⑨ There it is suggested that the use of the property for a criminal purpose renders it forfeitable, an idea

---

⑦ Harris v. United States, 331 US 145, 67 S Ct 1098, 91 L Ed 1399 (1947) (draft classification cards); Davis v. United States, 328 US 582, 66 S Ct 1256, 90 L Ed 1453 (1946) (ration books). See, Comment, 20 U Chi L Rev 319, 323 (1953); Reynard, Freedom from Unreasonable Search and Seizure—A Second Class Constitutional Right?, 25 Ind L J 259, 284-285 (1950); Comment, 45 Mich L Rev 605, 610-611 (1947); Comment, 38 Journal of Criminal Law & Criminology 244, 246 (1947); Comment, 37 Journal of Criminal Law & Criminology 413, 415 (1947).

⑧ "The tool or other object which killed a man was deodand and forfeit; a burglar's kit or a counterfeiter's plate has never been property in the ordinary sense, any more than liquor since the enactment of Section 25." Judge Learned Hand in United States v. Kirschenblatt, 16 F2d 202 (2d Cir 1926). Cases illustrating this principle are United States v. Trupiano, 334 US 699, 68 S Ct 1229, 92 L Ed 1663 (1947) (liquor still); McGuire v. United States, 273 US 95, 47 S Ct 259, 71 L Ed 556 (1927) (liquor); United States v. Hotchkiss, 60 F Supp 405 (D C Md 1945) (liquor still).

⑨ Zap v. United States, 328 US 624, 66 S Ct 1277, 90 L Ed 1477 (1946) (cancelled check used to defraud government held an instrumentality of the crime); United States v. Lefkowitz, 285 US 452, 52 S Ct 420, 76 L Ed 877 (1932) (books and papers found in a room from which orders for illicit liquor were solicited were not instrumentalities of the crime and thus not seizable); Marron v. United States, 275 US 192, 48 S Ct 74, 72 L Ed 231 (1927) (ledger and bills for gas, water and power seized in a speakeasy were instrumentalities of the crime charged); United States v. Howard, 138 F Supp 376 (D C Md 1956) (money contained in a safety deposit box was seizable as fruit of the crime of bank robbery).

apparently derived from the early English law of deodand, according to which the instrument used in causing the injury was forfeited to the crown.[10]

For the most part the cases limit lawful search and seizure to the foregoing categories although it is sometimes difficult to understand the court's basis for classifying the property in the particular case.[11] And there is not always consistency in the treatment of similar items of property,[12] nor, as would be expected,

---

[10] "It is difficult to believe, as has been suggested, that this metaphysical principle has been frozen into our Constitution." Kaplan, Search and Seizure: A No-Man's Land in the Criminal Law, 49 Calif L Rev 474, 478 (1961).

Judge Learned Hand found justification for the rule in the fact that "limitations upon the fruit to be gathered tend to limit the quest itself, and in any case it is something to be assured that only that can be taken which has been directly used in perpetrating the crime." United States v. Poller, 43 F2d 911, 914 (2nd Cir. 1930) Cf., Search and Seizure in the Supreme Court: Shadows on the Fourth Amendment, 28 U Chi L Rev 664 at 666 (1961); Allen, The Wolfe Case: Search and Seizure, Federalism, and the Civil Liberties, 45 Ill L Rev 1, 4 (1950).

It is occasionally intimated that the reason for excepting instrumentalities of the crime from the proscription against search and seizure is to remove from the accused that which might be used again in the commission of other crimes. Kaplan, supra at 477; Note, 1 Baylor L Rev 56, 63 (1948). Cf., Rule 41, Federal Rules of Criminal Procedure, which permits a warrant to be issued to search for any property "(2) designed or intended for use or which is or has been used as a means of committing a criminal offense * * *." 18 USCA, Rule 41 (1961).

[11] Zap v. United States, 328 US 624, 66 S Ct 1277, 90 L Ed 1477 (1946); Landau v. United States Attorney for Southern District of New York, 82 F2d 285 (2d Cir 1936), cert. denied 298 US 665, 56 S Ct 747, 80 L Ed 1389; In Re No. 191 Front Street, 5 F2d 282 (2d Cir 1924); United States v. Lerner, 100 F Supp 765 (N.D. Cal 1951); United States v. Bell, 48 F Supp 986 (S.D. Cal 1943).

[12] Compare Bushouse v. United States, 67 F2d 843 (6th Cir 1933) with Foley v. United States, 64 F2d 1 (5th Cir 1933). In *Bushouse* books and papers relating to business transaction were held not to be a means of committing the felony of conspiracy to violate the prohibition law, while in the *Foley* case the exact same type of records were held to be an instrumentality of the same crime of conspiracy.

is there a unanimity of view as to how particular items should be classified.⑱ It seems obvious that in some of the cases the treatment of the property as forfeitable is a rationalization for permitting its seizure.⑲ As I have indicated, the cases contain little or no explanation for the rule limiting search to the categories of property mentioned above. The underlying principle implicit in these cases is that property ownership and not the evidentiary character of the item sought or seized is the criterion in determining whether the item is seizable.⑳ For the most part the cases support the general proposition that one's property, no matter how indicative of the commission of a crime, cannot be searched for or seized. A search warrant does not remove the barrier set up to protect this right of private ownership and privacy; the barrier is removed only to permit the recapture of illegally obtained property owned by someone else or to permit the seizure of property which has been forfeitable.

⑱ In Zap v. United States, 328 US 624, 66 S Ct 1277, 90 L Ed 1477 (1946) the majority of the court regarded a cancelled check used in defrauding the government as a means of committing the crime, whereas the dissent considered it evidentiary only and immune from seizure as incident to arrest. (However, the dissent seems to say that the check was seizable under a search warrant. This would seem to be inconsistent with the holding in United States v. Gouled, 255 US 298, 65 L Ed 647, 41 S Ct 261 (1921)). See, Reynard, Freedom from Unreasonable Search and Seizure—A Second Class Constitutional Right?, 25 Ind L J 259, 282 (1950); Comment, 20 U Chi L Rev 319, 321 (1953).

⑲ See e.g., Harris v. United States, 331 US 145, 67 S Ct 1098, 91 L Ed 1399 (1947).

⑳ See Search and Seizure in the Supreme Court: Shadows on the Fourth Amendment, 28 U Chi L Rev 664, 676 (1961); Comment, 20 U Chi L Rev 319, 323 (1953). But cf., Weeks v. United States, 232 US 383, 392 (1914); United States v. Bell, 48 F Supp 986, 995 (S.D. Calif 1943). Wis Stat Ann 963.02 (10) (1958), provides that "instruments or other articles which have been used in the commission of or may constitute evidence of a crime" may be taken under a search warrant.

Although the law of search and seizure has been cast in terms of property concepts, it seems clear that a broader right of privacy is involved.[36] If it is felt that the private property concept limiting the scope of search and seizure under ORS 141.010 is anomalous, any change in the concept must be made in the legislature where the limits were created, and not in this court through word play extending the meaning of the "means of committing" a crime. For reasons which I shall explain later I believe that the term "means of committing" a crime should be construed narrowly and thus afford greater protection to the citizen's interest in privacy.

I have found no cases in which the court has treated the terms "means of committing" the crime or "instrumentality" of the crime as broadly as the majority treats it in the present case.

My dissent is also founded upon a second ground. I believe that the law should permit a search without a search warrant only in "exceptional circumstances."[37] The purpose of the statute requiring a search warrant is to subject to the judicial scrutiny of a magistrate the law enforcement officer's proposal to invade a citizen's privacy. That is also the purpose

---

[36] Lasson, The History and Development of the Fourth Amendment to the United States Constitution, 79-143 (1937); Kaplan, Search and Seizure: A No-Man's Land in the Criminal Law, 49 Calif L Rev 474 (1961); Search and Seizure in the Supreme Court: Shadows on the Fourth Amendment, 28 U Chi L Rev 664 (1961); Comment, 20 U Chi L Rev 319 (1953); Reynard, Freedom from Unreasonable Search and Seizure—A Second Class Constitutional Right?, 25 Ind L J 257 (1950).

[37] "There are exceptional circumstances in which, on balancing the need for effective law enforcement against a right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with." Johnson v. United States, 333 US 10, 14-15, 68 S Ct 367, 369, 92 L Ed 436, 440-441 (1948).

of the Fourth Amendment and ORS 141.010—141.190.[17] The correct rule is stated in *United States v. Trupiano,* 334 US 699, 68 S Ct 1229, 92 L Ed 1663 (1947), which holds that a search incident to an arrest is unlawful if it is practicable to obtain a search warrant. I realize that *United States v. Rabinowitz,* 339 US 56, 70 S Ct 430, 94 L Ed 653 (1950) has expressly overruled the *Trupiano* case. See also, *Harris v. United States,* 331 US 145, 67 S Ct 1098, 91 L Ed 1399 (1947). But we have our own constitution to interpret and in interpreting it we are not bound by the cases decided by the United States Supreme Court if we propose to afford our citizens a greater protection against unlawful search than that recognized in those cases.

As I understand *United States v. Rabinowitz,* supra, a lawful arrest validates the concomitant search irrespective of the ready availability of a search warrant.[18] The practical effect of this rule is to abolish the search warrant in those cases where officers wish to search the dwelling of the accused. Obviously they will not subject their proposal of search to judicial scrutiny (with its requirement that the items sought be designated) when a search can be made without such scrutiny.[19] I do not believe that our search warrant statute was intended to be so construed, nor do

---

[17] Johnson v. United States, 333 US 10, 68 S Ct 367, 92 L Ed 436 (1948).

[18] There is still some doubt as to whether United States v. Rabinowitz, supra, is still in full vigor. Chapman v. United States, 365 US 610, 615, 81 S Ct 776, 5 L Ed2d 828 (1961); United States v. Jeffers, 342 US 48, 51, 72 S Ct 93, 96 L Ed 59 (1951); Search and Seizure in the Supreme Court: Shadows on the Fourth Amendment, 28 U Chi L Rev 664, 702-703 (1961).

[19] Einhorn, The Exclusionary Rule in Operation—A Comparison of Illinois, California and the Federal Law, 50 J Crim L, C & P S 144, 151 (1959).

I think that either the Fourth Amendment or Article I, § 9 of our own constitution was designed to be so limited.

My view of the *Rabinowitz* and *Harris* cases accords with that expressed in the quotation from *Benge v. Commonwealth*, 321 SW2d 247, 249 (Ky 1959) set out in the margin.[@] In the Benge case the Kentucky Court of Appeals further stated:

> "If we should hold along with the lower court that a warrant of arrest, without more, is sufficient to justify an unlimited search of a man's home for evidence of any crime, provided only he is arrested in his home, we would never hereafter be compelled to determine that such a search and any seizure incident thereto would be unreasonable, nor that probable cause for the search must be shown under the circumstances. More than that, no description of the place to be searched or the thing to be seized would need to be given; nor would an oath or affirmation any longer be necessary as a basis to secure a search warrant. In short, all the restrictions put upon the issuance and execution of search warrants by the above quoted constitutional provision would offer no protection as to those who are arrested in their homes.

---

[@] "It seems to us, after reading each of the majority opinions of the Harris and Rabinowitz cases, that no justification other than the bare fact of making a lawful arrest on the premises was advanced for upholding the search for and seizure of illegal goods or contraband in each instance. The latter use of fruits of the crime thus obtained as evidence in the conviction of Harris and Rabinowitz was considered lawful as a matter of course. It is our view that every pertinent provision of the Fourth Amendment to the Federal Constitution was by-passed when each search and the results thereof were stamped by those cases with validity. It is our conclusion, too, the dissents to the two majority opinions are based upon such irrefutable reasoning as to why search and seizure should not have been permitted that this court is persuaded to follow them rather than the holdings of the majority opinions."

"Should we accept this view, we would be driven to believe that the framers of the Constitution of this Commonwealth, and particularly Section 10 thereof, were guilty of a serious blunder when they left open another way by which searches may be made without a search warrant and with none of the safeguards that should surround the obtaining of one." 321 SW2d at 249-250.

In the present case the majority abrogates the most important aspect of the constitutional guarantee afforded by the Fourth Amendment and Article I, § 9, Oregon Constitution. That aspect is described by Mr. Justice Jackson in *Johnson v. United States,* 333 US 10, 13-14, 68 S Ct 367, 369, 92 L Ed 436, 440 (1948):

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. [Footnote citation and quotation]. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. [Footnote citation and quotation]. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule,

to be decided by a judicial officer, not by a policeman or Government enforcement agent.

"There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with. But this is not such a case. No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to by-pass the constitutional requirement."

The reasons for holding invalid a search incident to arrest if it is practicable to obtain a search warrant are clearly stated in *United States v. Trupiano,* supra, and elswhere.[28] I shall not restate them here. Those reasons compel a holding that the seizure in this case was invalid if it is established that it was practicable to obtain a search warrant prior to seizure.

In the present case there was no reason for the officers to proceed without a search warrant. The case was not one which required urgent action. There was no indication that the accused was about to take flight.[29] The officers waited a considerable period of time before they even attempted to enter defendant's apartment. They had time to obtain an arrest warrant; it would not have taken any longer to obtain a search warrant. The complainant and her mother had

---

[28] United States v. Rabinowitz, 339 US 56, 68, 70 S Ct 430, 94 L Ed 653 (1950) (dissenting opinion); Harris v. United States, 331 US 145, 155, 67 S Ct 1098, 91 L Ed 1399 (1947) (dissenting opinion); United States v. Kirschenblatt, 16 F2d 202 (2d Cir 1926).

[29] See Taylor v. United States, 286 US 1, 6, 52 S Ct 466, 76 L Ed 951 (1932) where the court noted that "there was no probability of material change in the situation during the time necessary to secure such warrant."

reported the incident to the police a substantial period of time before the police entered defendant's apartment.[23] The officers had been informed by the complainant of the three items of evidence in question.[24] It having been practicable to obtain a search warrant, the seizure was illegal. *United States v. Trupiano,* supra.[25]

The arrest was valid. I shall assume that the officers had reason to search the other rooms in an effort to find the accused and I shall assume that they did not enter the other rooms for the purpose of searching for evidence of the crime (although the latter assumption is, under the circumstances of this case, not an easy one to make). There was, therefore, no invalid search. But the seizure without a warrant was invalid and the evidence should have been suppressed.

The requirement that the officers obtain a search warrant in this case, even though they already knew from their previous search what they wanted to seize,

---

[23] The record does not disclose the lapse of time in this respect, but it appears that the police had knowledge of the details of the crime approximately six hours prior to their entrance to defendant's apartment.

[24] The fact that the arresting officers had information sufficient to obtain a warrant has been referred to in the cases as a relevant factor in determining the reasonableness of the search without a warrant. Taylor v. United States, supra note 22; Go-Bart Co. v. United States, 282 US 344, 358, 51 S Ct 153, 75 L Ed 374 (1931); United States v. Kaplan, 89 F2d 869, 871 (2d Cir 1937).

[25] It is appropriate here to raise the question put in Kizer, The Fourth Amendment to the Federal Constitution—The Harris Case, 7 Lawyers Guild Rev 122, 126 (1947), "But, if the police knew in advance what they were searching for in such detail, where is the hardship of a rule that insists that a search warrant must be obtained before such a search can be made? If the law officers cannot comply with the requirements of a search warrant, assuredly they should not be allowed to evade those requirements by making such a search under cover of the arrest of one of the occupants of the place searched."

is not a mere formalism.[27] As I have previously indicated, the requirement that a search warrant be obtained is principally designed to subject to judicial scrutiny the officer's request for a search. The constitution intended that the judicial scrutiny was to be exercised before and not after seizure. Although defendant's privacy had already been lawfully invaded by the valid search for his person, the seizure must nevertheless be declared invalid, for if such seizures were not held to be illegal police officers would be encouraged to dispense with the preliminary application for a search warrant.[28] Of course, as I view it, the warrant would not have been forthcoming because the items seized did not satisfy the conditions of ORS 141.010 and the seizure would not have been valid in any case.

I disagree with the majority of the court on still another point. The majority holds that the seizure of the items in question was incident to Chinn's arrest. I believe that the seizure was illegal on two grounds. First, I am of the opinion that by extending the right of seizure of property not in the immediate presence of the accused the court invites the very type of exploratory search which is admittedly forbidden under constitutional provisions such as the Fourth Amendment and Article I, § 9. I concede that authority can be cited to support the view taken by the majority in

---

[27] Kaplan, Search and Seizure: A No-Man's Land in the Criminal Law, 49 Calif L Rev 474, 481 (1961). But cf., Search and Seizure in the Supreme Court: Shadows on the Fourth Amendment, 28 U Chi L Rev 664, 691 (1961).

[28] It has been recognized elsewhere that although one's privacy has been lawfully invaded the seizure may be illegal. Thus in United States v. Scott, 149 F Supp 837 (D D C 1957), it was held that officers lawfully on the owner's premises could not even seize contraband in plain sight but instead were required first to obtain a search warrant.

the present case.[29] However, I share the view of Mr. Justice Jackson dissenting in *Harris v. United States,* 331 US 145, 197, 67 S Ct 1098, 1120, 91 L Ed 1399, 1431 (1947):

> "Once the search is allowed to go beyond the person arrested and the objects upon him or in his immediate possession I see no practical limit short of that set in the opinion of the court and that means no limit at all."[30]

Secondly, I do not accept the view of the majority that a search of a dwelling may precede the arrest.[31] The case of *State v. McDaniel,* 115 Or 187, 231 P 965, 237 P 373 (1925), relied upon by the state, is not in point. There the court said that "it is immaterial whether the arrest preceded or followed the search *if such acts were practically simultaneous,* and if, in fact the defendant was guilty of committing a crime *in the presence* of the officers for which he might have been arrested." (Emphasis added). The search and arrest were not "practically simultaneous" in the present case. Furthermore, the rule in *State v. Mc-Daniel,* supra, applies only to search of the person and not to the search of a dwelling. The distinction

---

[29] United States v. Rabinowitz, 339 US 56, 70 S Ct 430, 94 L Ed 653 (1951); Harris v. United States, 331 US 145, 67 S Ct 1098, 91 L Ed 1399 (1947).

[30] See also, cases cited in note 20, supra.

[31] "[T]he search is not unlawful merely because it precedes rather than follows, the arrest." People v. Duroncelay, 48 Cal2d 766, 771, 312 P2d 690, 693 (1957); People v. Simon, 45 Cal2d 645, 290 P2d 531 (1955)*

\* N.B. Justice Traynor, in a footnote at 45 Cal2d 645, 649, 290 P2d 531, 533, distinguishes cases cited for a contrary rule by saying that there were other reasons for deciding the search unreasonable, that the statement in the case was dictum, that the officers had insufficient grounds for believing the offense was being committed in their presence, and that the defendant was not present or not discovered by the officers until after their search had been completed.

between the scope of the search in these two situations is clearly recognized in the cases.[38]

According to the rule now adopted by the majority, since the officers do not need a search warrant all they need do is choose the accused's home as the place of arrest and then proceed to make a thorough search of all the rooms in the house.[39]

The fundamental fallacy in the position taken by the majority is in viewing the law of search and seizure as if it had no constitutional content. The majority puts the problem in terms of weighing the interest of efficient law enforcement against the interest of the citizen to be free from an inordinate invasion of his privacy.[40] The problem is treated as if it involved nothing more than a tort principle comparable to that which extends a privilege of entry upon private property to a fireman or policeman in carrying out a governmental function. In search and seizure cases the interest which is our principal concern is the citizen's interest in being free from surveillance by executive officers of the government. The interest may be evaluated in terms of the danger which prompted the adoption of the Fourth Amendment. The amendment was adopted not simply to protect the citizenry from the inconvenience and embarrassment attending

---

[38] See e.g., Judge Learned Hand's opinion in United States v. Kirschenblatt, 16 F2d 202 (2d Cir 1926).

[39] It has been said that "* * * law enforcement officers try to avoid warrants whenever possible, and try to make their searches incident to a lawful arrest thereby avoiding altogether the necessity of a warrant." Einhorn, The Exclusionary Rule in Operation—A Comparison of Illinois, California and the Federal Law, 50 J Crim L, C & P S 144, 151 (1959).

[40] Cf., Search and Seizure in the Supreme Court: Shadows on the Fourth Amendment, 28 U Chi L Rev 664, 666 (1961); Allen, The Wolfe Case: Search and Seizure, Federalism, and the Civil Liberties, 45 Ill L Rev 1, 3-4 (1950).

the entry of officers into their homes, but to put a check on executive action which might endanger political freedom. The amendment was drafted by those who had a fresh recollection of the abuses which had been exercised in the course of subjugating citizens to the will of despotic leaders. The danger of such abuses is still present. As Mr. Justice Frankfurter said in his dissent in *United States v. Rabinowitz*, 339 US at 82, 70 S Ct at 442, 91 L Ed at 669:

> "The progress is too easy from police action unscrutinized by judicial authorization to the police state."

The danger was seen by Judge Learned Hand in *United States v. Kirschenblatt*, 16 F2d 202 (2d Cir 1926), where he said, "nor should we forget that what seems fair enough against a squalid huckster of bad liquor may take on a very different face if used by a government determined to suppress political opposition under the guise of sedition."

Article I, § 9, Oregon Constitution, and the Fourth Amendment should be construed in light of these dangers, "so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned but mistakenly over-zealous executive officers." *Gouled v. United States*, 255 US 298, 304, 41 S Ct 261, 263, 65 L Ed 647, 650 (1921).

For the foregoing reasons I am of the opinion that the judgment of conviction should not be permitted to stand. In my treatment of the case I have assumed that the arresting officers entered consensually. I am not certain that the entry was consensual in a legal sense, but since the seizure was illegal on other grounds it is not necessary to decide that question.