Argued October 19, 1977, reversed and remanded for new trial
May 30, 1978

STATE OF OREGON, *Respondent,*

*v.*

JERRY LEE ZIEBERT, *Appellant.*

(No. 99312, CA 8416)

579 P2d 275

Robert C. Cannon, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Carol J. Molchior, Certified Law Student, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Tanzer and Roberts, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

Defendant, convicted by a jury of first degree burglary, ORS 164.225, contends on appeal that the trial court improperly forbade him to examine prospective jurors on voir dire concerning possible bias against him because he had previously been convicted of a crime.

On March 1, 1977, defendant was employed as a house cleaner by Robert Wilson, who managed rental houses. During the lunch hour on March 1, 1977, Wilson left a note for defendant at the house defendant was cleaning, requesting that defendant bring a key to the office Wilson maintained in his house. Wilson returned to his house and, after waiting some period of time, returned to the job site to try to find defendant. Wilson was unable to locate defendant at the job site, but did encounter him on the road while returning to his house. Defendant told Wilson that he left the key in Wilson's garage. Wilson found the key and also discovered that $305 had been taken from a cash box since he had left his house to try to find defendant. The missing money consisted of one $100 bill, ten $20 bills and one $5 bill.

Wilson returned to the job site and, after a discussion with defendant, called the police. The police searched defendant with his consent and, although defendant stated he only had "loose change" on his person, found $220 in one of defendant's shoes — one $100 bill and six $20 bills. Three of the $20 bills in defendant's shoe bore red stains similar to stains on some $20 bills Wilson had received earlier from a tenant and which he had placed in the cash box. Defendant's fingerprints were not found on the cash box.

Defendant told the police that the money in his shoe was money he had been saving out of each pay check for a divorce, though he had not reported saving any money to his probation officer, as he was required to do. Defendant also told the police that he had found

the note from Wilson and then taken the key to Wilson's house. Upon finding no one home, he left the key in the garage. Defendant told the police that he had obtained the $100 bill from a gas station in exchange for five $20 bills, but the manager of the gas station as well as an employe of the gas station testified that they did not make this exchange and noted that the usual procedure at the station was to immediately put bills with large denominations into a floor safe from which they could not be easily retrieved. Defendant at all times denied taking the money from the cash box. The $85 difference between the amount taken from the cash box and the amount found in defendant's shoe has never been accounted for.

Prior to trial, the following exchange took place between the prosecutor, the defendant's attorney and the trial court:

"MR. CANARY [prosecutor]: * * * We have a motion prior to the jury being brought in * * *.

"* * * * *

"MR. CANARY: The motion would be a motion in limine to restrict the defendant questioning the jury panel with regard to his prior convictions for burglary in the first degree or forgery in the first degree, and to limit defendant's questioning in this case in chief with regard to his prior conviction.

"* * * * *

"MR. HILGEMANN [defense attorney]: * * * I do not oppose the portion of the State's motion which relates to questioning of the defendant on direct examination in relation to his previous conviction. However, I do oppose the part of the motion which would prevent me from inquiring of the jurors of possible bias toward a person who has been convicted of a crime previously, and I think that is within the province of the defense to inquire about the jurors' feelings, about a person who has been convicted previously of a crime * * *.

"THE COURT: We have discussed this in chambers, and the State has advised me at that time that they were going to make such a motion and I have examined some authority.

"The first case cited was State versus Miller [1 Or App 460, 460 P2d 874 (1969)] * * *.

"* * * * *

"* * * It would seem to me that if the language in that case means what it says, that the defendant does not have the privilege of advising the jury, either through his direct testimony—and I think it would follow, on voir dire examination—the fact of a prior criminal record. I do not feel compelled to go contrary to the decisions of the Oregon Court of Appeals on that subject matter, although I might not personally agree with it. I would therefore allow the State's motion in limine so far as voir dire examination of the jury, and the defendant's direct testimony * * *."

In its case in chief, the prosecution introduced evidence that defendant had previously been convicted of forgery. The prosecution did this by means of testimony by defendant's probation officer, who was called to testify that defendant had not reported saving any money to him. After defendant had testified in his own behalf, the prosecution introduced the judgment order sentencing defendant for first degree forgery.

■ As the trial court noted, in *State v. Miller,* 1 Or App 460, 466, 460 P2d 874 (1969), *rev den* (1970), we held that under ORS 45.590 a defendant should not be allowed to impeach his own testimony by proving that he had been previously convicted of a crime. In *State v. Gilbert,* 282 Or 309, 577 P2d 939 (1978), the Supreme Court held, contrary to *Miller,* that ORS 45.590 does not "forbid a party to let its witness disclose a prior conviction as part of his background when this is not done for impeachment." As the Supreme Court has long held that a defendant should be allowed latitude in voir dire questioning about matters relevant to trial in order to intelligently exercise his peremptory challenges, *see State v. Steeves,* 29 Or 85, 96, 43 P 947 (1896); *cf., State v. Nagel,* 185 Or 486, 506, 202 P2d 640, *cert den* 338 US 818 (1949); *State v. Wallace,* 170 Or 60, 109, 131 P2d 222 (1942), the trial court erred here in not allowing defendant to question prospective

jurors about the possibility that they might be prejudiced by defendant's prior conviction.

■ Reversible error is committed only when the defendant has been prejudiced by the error. Or Const, Amended Art VII, § 3; ORS 138.230. In *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973), the court stated that an error is prejudicial unless the error committed was very unlikely to have changed the result of the trial. We cannot say that such was the case here, particularly in view of the fact that the state forcibly directed the jury's attention to the defendant's prior conviction. Further, defendant's prior conviction of forgery involved, as did the burglary with which he was charged here, an element of theft. It is true that the trial court did instruct the jury to treat defendant's prior convictions as affecting only the defendant's credibility as a witness; however, that is not a substitute for counsel's right to inquire into the individual juror's attitude toward convicted felons in an attempt to determine the ability of the jurors to be guided by the court's instructions. Under these circumstances, we conclude that the trial court's limitation of defendant's voir dire questioning constituted prejudicial error.

Reversed and remanded for a new trial.