585 P.2d 24 (1978)
36 Or.App. 547
STATE of Oregon, Respondent,
v.
Roy Ray WASHINGTON, Appellant.
No. C77-05-07402; CA 9520.
Court of Appeals of Oregon, In Banc.
Argued and Submitted May 15, 1978.
Decided October 16, 1978.
Howard R. Lonergan, Portland, argued the cause for appellant. With him on the brief was Clinton A. Lonergan, Portland.
Gregory A. Parker, Asst. Atty. Gen., Salem, argued the cause for respondent. *25 With him on the brief were James A. Redden, Atty. Gen., and Al J. Laue, Sol. Gen., Salem.
TANZER, Judge.
This is an appeal from a criminal conviction of one count of criminal activity in drugs by possession of heroin and a second count of harassment by kicking a narcotics officer. There is an array of assignments of error and we review those which are dispositional.
The defendant was arrested following the search pursuant to a warrant of the home which he shared with a woman. Small quantities of heroin and sugar were found in two places in the home.

I. $5,000 AND THE PICTURE
Defendant first assigns as error admission over objection of evidence that he was in possession of over $5,000 in currency and of a photograph of Debra Gill, the woman with whom he lived, which portrayed her in possession of currency. Defendant argues that the only relevance is to show that a black man with a lot of money must be engaged in illegal activity. To the contrary, taken together with evidence that the defendant had been unemployed for three months, that Debra Gill was receiving public assistance, and that in the home there were blenders, a container with milk sugar and packages of balloons, all of which are commonly used for the preparation and packaging of heroin, as well as a phonograph record jacket with scraping marks which, in the custom of the trade, are characteristic of repeated use for cutting heroin, defendant's possession of a large quantity of money is a circumstance from which the jury might reasonably infer that he was in possession of the heroin powder found in the home because he was selling heroin.
This differs from a similar inference which was disallowed in State v. Manrique, 271 Or. 201, 531 P.2d 239 (1975), which concerned admissibility of other sales of heroin to prove the same with which defendant was charged. There other sales were deemed inadmissible because they were remote from the charge and prejudicial. "Prejudicial" as used in Manrique apparently means excessively relevant to jurors. Here, however, we do not deal with other sales at other times as in Manrique. Rather, we deal with evidence indicating a contemporaneous reason for defendant's possession of heroin at the time charged. As such, it was relevant, albeit at the edge of relevance, and it was therefore admissible.
A disclaimer is appropriate. Somewhere between clearly relevant and clearly irrelevant circumstances are those circumstances the relevance of which undeniably exists, but is not weighty. There is no objective test for the right or wrong of admissibility rulings for circumstances which imply relevant inferences but do not imply them strongly. Rather, we implicitly acknowledge that admissibility rulings require a sensitive exercise of discretion by the trial court and, unless we as an appellate court can say with conviction that the trial court's judgment call was wrong, we refrain from substituting our judgment in such rulings.
This practice of appellate restraint is appropriate for at least two reasons. First, the trial judge has a better sense of the atmosphere of the trial. Second, the drastic remedy of reversal is the only means by which to impose our will. Reversal is warranted where we are confident that our sense of discretion is better, but not where we would merely have ruled differently had we presided at trial.

II. PRIOR CONVICTIONS
The more difficult issue is presented by the handling of evidence of defendant's prior convictions for attempted criminal activity in drugs and criminal drug promotion. On voir dire, without objection, defense counsel asked the prospective jurors about their attitudes regarding the existence of *26 defendant's prior convictions.[1] Defendant testified. Upon the state's preliminary objection, defense counsel was prevented from asking the defendant about his prior convictions on direct examination. On cross-examination, copies of the judgments of conviction offered by the state were admitted into evidence. Upon re-direct examination, defense counsel asked defendant what drugs were involved in the prior convictions. The state's objection was sustained. In an offer of proof, defendant showed that one conviction related to amphetamines and that the other was for one marijuana "joint"; in other words, neither of them related to heroin.
Until recently, the rules in this area were clear and capable of certain application. Evidence of a witness' prior convictions of crime was regarded as impeaching evidence available to the proponent of the witness only under exceptional circumstances. ORS 45.590. Once the name of the crime and the date and place of the conviction were established, no further details of the conviction were admissible. State v. Johnson, 277 Or. 45, 48, 559 P.2d 496 (1977).
State v. Gilbert, 282 Or. 309, 577 P.2d 939 (1978), changed all that. Gilbert held that the proponent of a witness may disclose prior convictions on direct examination "as part of his background." Such evidence is not barred on direct examination by ORS 45.590 or 45.600[2] because, the court held, the evidence of prior convictions is offered to make the witness credible, not noncredible. Exactly what it is about prior convictions that tends to enhance a witness' credibility is not explained. Rather, although tactical advantage has never hitherto been a basis for relevancy determinations, the Gilbert opinion speaks of the tactical benefit of defusing anticipated impeachment by early disclosure. Which rationale predominates, relevancy or tactic, is unclear from the opinion.
This case presents the first opportunity for this court to apply these new principles, and the task is not altogether simple. First, the sustaining of the state's preliminary motion to bar defendant from disclosing his prior convictions on direct examination was error. Gilbert holds, however, that failure to allow a party to enhance a witness' credibility by showing his prior criminal convictions as part of his background is not necessarily prejudicial. Gilbert pointed out that it is "difficult to perceive any prejudice" arising from allowing on direct what would have been revealed later on cross-examination; conversely, by the same reasoning, it is hard to perceive prejudice from delaying until cross-examination the same revelation which should have been allowed on direct examination. Where, as here, defendant's attorney questioned prospective jurors about *27 defendant's prior convictions[3] and the prosecutor remedied the omission by eliciting the desired evidence on cross-examination, we conclude with reasonable certainty that the verdict was unaffected by the legally erroneous timing of the disclosure.
The refusal to allow defendant to testify that his prior convictions were for drugs other than and of a lesser magnitude than heroin presents a more difficult question. If the rationale of Gilbert is that the proponent of a witness is entitled to show criminal convictions "as part of [the witness'] background" along with address, occupation, family situation, etc., then certainly the witness should be able to describe the nature of his past crimes in at least summary terms. Under this theory, it would seem prejudicially erroneous to prevent defendant from showing that his prior drug offenses related to less serious drugs than heroin. If, however, the rationale of Gilbert is that the proponent may offer such evidence to gain tactical advantage by defusing anticipated impeachment, then a summary description of the crime could not be offered because under State v. Rollo, 221 Or. 428, 351 P.2d 422 (1960), the impeaching party may not inquire into the circumstances of the conviction and under State v. Johnson, supra, the proponent cannot so inquire for rehabilitation.
Here, the defendant offered the proof on re-direct examination for its rehabilitative effect. Although it might be inferred that he would have so testified on direct examination had he been allowed to do so and the theoretical dilemma of Gilbert would have to be resolved, the procedural posture of this case does not require it. Rather, we conclude that the Supreme Court was motivated in Gilbert more by a sense of fairness rather than a Cartesian devotion to logic. If it were faced with these particular facts, the court would likely relax the strict Johnson rule sufficiently to allow a brief specification of the charge in an impeaching prior conviction, but no more because the issue should not be open to relitigation of the former charge except possibly for equally summary contradiction by the other party. It was therefore error not to have allowed the defendant to briefly specify the charge for which he had been formerly convicted and, given the nature of this charge, the error was prejudicial.
Reversed and remanded for new trial.
BUTTLER, J., specially concurring in part and dissenting in part opinion.
BUTTLER, Judge, specially concurring in part and dissenting in part.
While I agree with the majority that this conviction must be reversed because of the Supreme Court's decision in State v. Gilbert, 282 Or. 309, 577 P.2d 939 (1978), I do not agree with the majority's reluctant compliance with that decision, and therefore specially concur in that portion of the opinion. With respect to the majority's holding under the heading "$5,000 and the Picture," I disagree, and because the evidentiary question remains important on retrial, I register my dissent.
First, the area of general agreement: Gilbert tells us it was error for the trial court to foreclose defendant from disclosing his prior convictions on direct testimony. While the majority comes to that conclusion, it does so begrudgingly and only after discussing what it deems to be a mystique in the rationale of Gilbert, a mystique I do not discern. The majority also would not find this error, alone, reversible, because the prosecutor obligingly "remedied the omission by eliciting the desired evidence on cross-examination" (opinion at page 27) and "the verdict was unaffected by the legally erroneous timing of the disclosure." (Opinion at page 27.)
In my opinion, Gilbert is neither mystical nor illogical: the Supreme Court held that the proponent of a witness may disclose prior convictions on direct examination "as part of his background," (282 Or. at 314, 577 P.2d 939) in order to introduce the witness to the jury "for who he was." (282 Or. at *28 313, 577 P.2d 939.) Neither ORS 45.590[1] nor 45.600[2] is applicable because, the Court held, the proponent of the witness was not intending to impeach him. The rationale of the Court's opinion in Gilbert is that a party may avoid being impeached, or apparently impeached, by relating on direct examination his prior convictions so that it does not appear that the witness was withholding unfavorable information relating to his background from the jury.
While the witness whose testimony was involved in Gilbert was not the defendant, the same reasoning applies to the defendant as a witness. In fact, the Gilbert rationale is even more persuasive with respect to the defendant as a witness in his own behalf because his credibility, his denial of having committed the crime charged, is directly in issue. The witness's credibility in Gilbert was not; his testimony was not challenged. Accordingly, the trial court's error in precluding defendant from testifying with respect to his prior criminal convictions on direct examination was prejudicial.
I also agree with the majority's conclusion that the trial court's refusal to permit defendant to give a summary explanation that his prior convictions related to drugs other than, and of a lesser magnitude than, heroin, was error. Again, however, I do not share the majority's apparent difficulty with the rationale of Gilbert. It seems clear to me that the Supreme Court's rational dictates that defendant be entitled to do so, and I would add to the majority's holding that defendant's right to do so be qualified in that he not be permitted to deny his guilt, and the summary description of the offenses may not involve collateral issues.
Second, the area of dissent: I cannot agree that evidence that defendant was in possession of a large sum of cash found in the apartment defendant shared with Ms. Gill and her children has any relevance to the question of possession. The majority argues that it may be inferred from that fact that he must have been selling heroin. But defendant was not charged with selling, and possession is not material to that offense. There are any number of reasons, both legal and illegal, why one might have large sums of cash in one's home, the resolution of which is a collateral matter.
Even if defendant's cash were admissible, the photograph of Ms. Gill lying on a bed with her arms caressing what appears to be numerous stacks of currency laid out on the bed, would appear to be so irrelevant to defendant's possession of 1/2 gram of heroin as to be beyond argument. Apparently, the majority believes it permits the inference that Ms. Gill was engaged in selling heroin. Not only was she not so charged, but the state was willing to permit her to plead guilty to one count of her two count indictment (possession of 1/2 gram of heroin).
I think the majority is mistaken on both points, and that the admission of that evidence was prejudicial. It is prejudicial for the very reason the state wanted to have it before the jury: it is unlikely the defendant or Ms. Gill would have such large sums of money unless one or both of them were engaged in some illegal activity, and hopefully the jury would conclude that such activity included the illegal possession with which he was charged. If that kind of *29 evidence is relevant in this case, one's imagination would be the principal limit on the admissibility of evidence: defendant drove an expensive car; his girlfriend had expensive jewelry, etc.
While it is difficult to categorize such evidence (primarily because it proves nothing), it is akin to, but falls short of, evidence of other bad acts. It is clear that if the state had offered evidence that defendant had actually sold heroin to an undercover agent, such evidence would not have been admissible to prove that he probably possessed the heroin in this case. In State v. Manrique, 271 Or. 201, 531 P.2d 239 (1975), reversing this court, 16 Or. App. 538, 519 P.2d 397 (1974), defendant was charged with selling heroin, and the state introduced evidence that the defendant had made other sales to an undercover agent. Such evidence was offered to show that defendant had access to heroin and that he was engaged in retailing it. The Supreme Court rejected the evidence, stating that access to heroin or being engaged in heroin traffic was not in issue; such evidence lacked sufficient probative value and was collateral. 271 Or. at 211-12, 531 P.2d 239.
It is anomalous, indeed, that proof of the actual fact of selling is not admissible, but proof of a fact that could possibly lead to an inference of selling is admissible. The logic, if any there be, escapes me.
The majority concedes that, at best, the evidence was "at the edge of relevance" (opinion at page 25), but does not even discuss the matter of prejudice. It is well established that "where the relevancy of the evidence is slight and the probability of undue prejudice is substantial, the evidence should be excluded." State v. Harrison, 253 Or. 489, 491, 455 P.2d 613, 614 (1969). Cf. State v. Pruitt, 34 Or. App. 957, 580 P.2d 201, rev den (1978).
Instead of discussing the prejudicial effect of the evidence, the majority expounds on the reluctance of an appellate court to substitute its judgment for that of the trial court. First, they say, "the trial judge has a better sense of the atmosphere of the trial." (Opinion at pate 25.) True, but how does that sense of atmosphere affect the relevance of evidence? Second, the majority says that "reversal is the only means by which to impose our will." (Ibid.) But the majority reverses this case on other grounds, so the observation is superfluous here. The question is whether the evidence should be admitted on the retrial made necessary by the court's decision.
Because I think the evidence should not be admitted, I respectfully dissent.
THORNTON, RICHARDSON and ROBERTS, JJ., join in this specially concurring and dissenting opinion.
NOTES
[1] The questioning is not transcribed, but it is later referred to during a hearing on the prosecutor's preliminary objection:

"[PROSECUTOR]: * * * [Defense counsel] on voir dire has indicated to the jury that his Defendant has been convicted of a crime.
"Of course, that's fine, but I would ask the Court to caution any possible impeachment of him on direct examination if he does take the stand because I'm afraid it would preclude me from offering the judgment rolls themselves which I do intend to offer."
[2] ORS 45.590 provides:

"The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony, as provided in ORS 45.610. However, when a party calls as a witness either an adverse party or the assignor, agent, officer or employe of an adverse party, he shall not be deemed to have vouched for the credit of that witness and he may impeach the credit of that witness in the same manner as in the case of a witness produced by an adverse party."
ORS 45.600 provides:
"A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth is bad or that his moral character is such as to render him unworthy of belief; but he may not be impeached by evidence of particular wrongful acts, except that it may be shown by his examination or by the record of the judgment, that he has been convicted of a crime."
[3] In this respect the case differs from State v. Ziebert, 34 Or. App. 497, 579 P.2d 275 (1978).
[1] ORS 45.590 provides:

"The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony, as provided in ORS 45.610. However, when a party calls as a witness either an adverse party or the assignor, agent, officer or employe of an adverse party, he shall not be deemed to have vouched for the credit of that witness and he may impeach the credit of that witness in the same manner as in the case of a witness produced by an adverse party."
[2] ORS 45.600 provides:

"A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth is bad or that his moral character is such as to render him unworthy of belief; but he may not be impeached by evidence of particular wrongful acts, except that it may be shown by his examination or by the record of the judgment, that he has been convicted of a crime."