Argued May 31, reversed and remanded for trial
September 24, 1979

STATE OF OREGON,
*Appellant,*

*v.*

JOSEPH THOMAS BARON,
*Respondent.*

(C-78-09-14577, CA 12863)

600 P2d 1232

Robert C. Cannon, Assistant Attorney General, Salem, argued the cause for appellant. With him on

the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Julie E. Frantz, Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, Thornton, Buttler, Joseph, Judges, and Peterson, Judge Pro Tempore.

THORNTON, J.

■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■

## THORNTON, J.

The state appeals from an order sustaining defendant's motion to suppress heroin discovered in defendant's trousers while police officers searched a dwelling under a search warrant.

The essential facts are:

A party of city police officers went to a Portland residence to execute a search warrant at about 11 a.m. The warrant provided for the search of three named persons and the residence for heroin, narcotics, narcotic paraphernalia and items of identification. After they entered, they went to one of the bedrooms where they found defendant and a young woman asleep in bed. The officers requested the couple to get dressed and go to the living room. Defendant requested Officer Panit to hand him his trousers, which were lying on the floor. Defendant was not known to the officers and was not named in the search warrant, although his female companion was named. Before handing over the trousers, the officer squeezed the pockets looking for knives and "things like that." The officer felt a hard cylindrical object, like a small tin canister. He recognized the canister as the kind of container often used to carry drugs. He opened the canister and found a small plastic bag containing a white powder which he suspected as being heroin. Thereafter, defendant was charged with possession of a controlled substance.

Following an evidentiary hearing, the trial court allowed defendant's motion to suppress and dismissed the charge. The court made the following findings of fact and conclusions of law:

"1. On September 9, 1978, Portland Police Officers executed a valid search warrant for premises located at 1208 North Jessup in Portland, Multnomah County, Oregon, and for the persons of Shari VanKirk, John Doe Dick and Jane Doe Kathy. The warrant commanded a search for heroin, narcotics, narcotics paraphernalia and items of identification.

[275]

"2.    Portland Police Officer Panit assisted in the execution of the warrant but did not know if any persons were to be searched pursuant to the warrant. Prior to searching the residence, Officer Panit located a male, who is the defendant, and a female, who is Shari VanKirk, in bed together at the residence. Panit did not know the identity of the two persons.

"3.    Officer Panit ordered the two persons to get out of bed and go to the living room. The defendant was nude and requested Panit to hand him a pair of pants located on the floor near the bed. The defendant indicated that the pants belonged to himself.

"4.    Officer Panit picked up the pants and prior to giving them to the defendant searched the pockets for possible weapons.

"5.    In one pocket Officer Panit located a metal canister approximately 1-1/2 inches in diameter and 3/4 inches high. The canister is of a type often used for dangerous narcotic drugs and prescription pills.

"6.    Officer Panit kept the canister and a short time later opened it and discovered that it contained a plastic bag containing white powder.

"7.    Officer Panit suspected the powder was heroin, and subsequent analysis established that it is heroin.

"8.    The defendant was not named in the warrant.

"9.    The defendant did not consent to the search of his pants or canister.

"10.    The defendant requested his pants so that he could put them on to go to the living room, and thus his pants were not part of the residence to be searched for heroin.

"11.    The defendant had a reasonable expectation of privacy and freedom from unreasonable search as to his person and clothing which he did not relinquish by being found in bed in a residence listed in a search warrant.

"12.    Officer Panit did not have probable cause to open the canister, and the search of the canister was unlawful."

Subsequently, on reconsideration and reargument the court made the following additional conclusions of law:

"Officer Panit had the right to pat down defendant's pants for possible weapons, and such pat down was lawful."

We conclude that the trial court erred in suppressing the seized evidence.

The officers executing the search warrant were entitled to pat down defendant's trousers for their own protection before handing them over to defendant. *See State v. Riley*, 240 Or 521, 402 P2d 741 (1965); *State v. Garza*, 32 Or App 643, 574 P2d 1151, *rev den* 283 Or 1, *cert den* 58 L Ed 2d 663 (1978). When the officer discovered a weapon or a container of the type commonly used for carrying narcotics and dangerous drugs he had probable cause to seize and open the container. This was so without reference to the authority granted in the search warrant. Although defendant was not named in the warrant, he was in a house where narcotics were believed to be present.

We do not believe that defendant had a reasonable expectation of privacy under the totality of the circumstances in this case. *State v. Elkins*, 245 Or 279, 422 P2d 250 (1966), cited by defendant, is distinguishable on the facts. There defendant was arrested on the street for being drunk in public. After the arrest, the officer searched defendant's person for a possible weapon and in his shirt pocket found an unlabeled bottle containing three kinds of capsules and pills. The officer did not know that any of the pills were contraband but seized them notwithstanding. The court held the seizure unreasonable. Here, on the contrary, the officers were in the course of executing a search warrant for drugs. The canister came to light during a protective pat-down search for weapons.

Likewise, we find *State v. Ford*, 20 Or App 384, 531 P2d 740 (1975), and *State v. Gressel*, 276 Or 333, 554

P2d 1014 (1976), inapposite. *Ford*, although factually similar to the instant case, did not involve a pat down search of clothing for a possible weapon. We held that defendant's possession of a bent spoon in his pocket did not provide the officer with a well warranted suspicion that defendant was carrying drugs.

*Gressel* is plainly distinguishable on the facts. There defendant was stopped by police officers on the street about a half mile from a reported burglary. A pat-down search of defendant disclosed no weapons, and defendant's answers to questions were consistent with his presence at the time and place. A search of defendant's pockets, however, produced a small quantity of marijuana. The Supreme Court held that the search of defendant was conducted without probable cause.

Reversed and remanded for trial.

**SCHWAB, C. J.,** concurring

I concur with the majority, but agree with the dissent that *State v. Ford*, 20 Or App 384, 531 P2d 740 (1975), is contrary to the result we reach today. I would overrule it.

Joseph, J., joins in this concurring opinion.

**BUTTLER, J.,** dissenting.

Because I think the trial court properly held that the warrantless search of defendant's clothing was without probable cause, I dissent.

Unless we are prepared to hold that there is probable cause to search any person present at the time a valid warrant to search for drugs is being executed, the majority opinion is wrong. We have never so held, and, in fact, have held to the contrary where there were facts lending substantially more support to a finding of probable cause for a search than exists here. In *State v. Ford*, 20 Or App 384, 531 P2d 740 (1975), the defendant showed up at premises

where a search warrant was being executed in search of drugs. Defendant had sticking out of his pocket, in plain view, a bent spoon, which is commonly used in connection with the illegal use of drugs. A police officer removed the spoon from defendant's pocket, and at that time observed a cannister which was also seized. We held that the officer was without probable cause to search defendant and seize the spoon and cannister.

In *State v. Groda*, 285 Or 321, 591 P2d 1354 (1979), defendant appeared at the scene of an extensive drug search pursuant to a warrant after having called immediately prior to his arrival. He asked for Richard, and when the officer said Richard was busy, defendant said: "[T]his is Ronny--Tell him they're done and I'm on my way over." On those facts, the Supreme Court held that the officers had probable cause to arrest defendant and to search his person incident to the arrest. No such facts exist here. In *Groda*, the Supreme Court said:

> "A search of a person without a warrant is permissible as an incident to arrest and the search of the defendant was valid for this reason. The reason a search without a warrant is permissible as an incident to arrest is to protect the officer and to avoid the destruction or disappearance of evidence. *Chimel v. California,* 395 US 752, 762-763, 89 S Ct 2034, 23 L Ed 2d 685 (1969); *State v. Chinn,* 231 Or 259, 267, 373 P2d 392 (1962). These reasons are applicable in the search of the defendant in this case.

> "In order to arrest a person without a warrant, the officer must have probable cause to believe that a crime has been or is being committed by the arrested person. (In this case we do not need to amplify on the nature of the crime.) In the present case the officers had to have probable cause to believe that the defendant was engaging in a crime encompassing the possession of drugs." 285 Or at 325-26.

Clearly, the officers had the right to pat down defendant's trousers for a weapon, but when they

found none, that should have ended the matter. *State v. Gressel*, 276 Or 333, 554 P2d 1014 (1976). *See State v. Krogness*, 238 Or 135, 388 P2d 120 (1963), *cert den* 377 US 992 (1964).

I do not understand the majority's statement that defendant did not have a reasonable expectation of privacy with respect to the contents of his trousers. He had as much expectation as the defendant did in *State v. Elkins*, 245 Or 279, 422 P2d 250 (1966), where the police, after a valid arrest of defendant, patted him down for a possible weapon and seized an unlabelled bottle containing capsules and pills which subsequently were determined to be contraband.

The majority opinion does not cite any authority in support of its decision, other than those which support the proposition that the officers were entitled to pat down defendant for weapons for their own protection. The only other authorities discussed in the majority opinion are those which the majority contends are "inapposite," and are those mentioned briefly in this dissent.

The state had the burden of proving that the officers had probable cause to search defendant. *State v. Groda, supra.* It failed to do so here.

Trial judges, as well as law enforcement authorities, are entitled to know what the ground rules are. The majority opinion does not further that cause; if anything, it makes them less distinct. At the very least, we should overrule *State v. Ford, supra,* if we are not going to follow it. We cannot, however, do anything about *Groda, Gressel,* and *Elkins* except to follow them.

Therefore, I respectfully dissent.