Argued and submitted May 30, reversed and
remanded for a new trial August 4, 1980

STATE OF OREGON,
*Respondent,*
*v.*
ANDREW CLARK,
*Appellant.*

(No. 35277, CA 15863)

615 P2d 1044

Robert J. McCrea, Eugene, argued the cause for appellant. With him on the brief was Morrow, McCrea & Divita, P.C., Eugene.

John C. Bradley, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Richardson, Judges.

RICHARDSON, J.

THORNTON, J., dissenting opinion.

## RICHARDSON, J.

Defendant appeals his conviction of robbery in the first degree, ORS 164.415.[1] He assigns as error the admission of other crimes evidence, the denial of motions for acquittal on the ground of insufficiency of the evidence to support the charges and denial of two pretrial motions for dismissal.

On the evening of April 4, 1977, a campus security officer at Oregon State University, was seated at her desk in the radio room approximately nine feet from the security office entrance when the door opened and a voluminous yellow cloud appeared. She retreated to the back room. Once she got into the outer office she heard a loud noise. When she returned to the radio room she could see through the yellow fog and noticed that a display case had been broken into and that two kilograms of marijuana, which had been on display, were gone. A beer bottle, with what appeared to be gasoline inside and a burnt rag stuck in the top, was discovered laying on the floor behind the radio room desk.

An accomplice of defendant's testified that he and the defendant filled several beer bottles with gasoline and carried them to the campus. Defendant put three bottles in his pockets and carried one. When they reached the campus security office, defendant lit the fuse, tossed the bottle inside and began spraying a fire extinguisher in the door. They broke the case, stole the marijuana and ran.

Defendant's first assignment of error concerns the admission, over his objection, of testimony that he was involved in other criminal activities. An accomplice, who was not charged with this offense, testified before the jury as follows:

---

[1] Defendant was charged in a two count indictment with robbery in the first degree, ORS 164.415, and robbery in the second degree, ORS 164.405. He was convicted on each count but the offenses were merged and defendant was sentenced on his conviction for robbery in the first degree.

"Q. [By Prosecutor] What has caused you to come forward here and tell the people about this matter?

"A. Well, I was charged with it at one time.

"Q. What has happened to that charge?

"A. Well, they dropped it.

"Q. Was the dismissing of that charge — was there other things you had to do in order for that charge to be dismissed?

"A. Just testify.

"Q. Anything else?

"A. Plead guilty to two other charges

"Q. What were those?

"A. Theft and burglary.

"Q. You have entered pleas of guilty to those charges?

"A. Yes.

"[By Prosecutor]: I have nothing further of this witness at this time.

By defendant's attorney:

"* * * * *

"Q. Now, when were you arrested on this charge, this robbery charge?

"A. I never was arrested.

"Q. When were you first brought into court on it?

"A. In July.

"Q. 1978?

"A. Yes.

"Q. Well, '79?

"A. '78.

"Q. Is it true that this deal was made, that wasn't made until March of 1979?

"* * * * *

"Q. Now, you testified that you were to plead guilty to a burglary and a theft; is that correct?

"A. Yes.

"* * * * *

"Q. Well, it is correct, is it not, so we understand this, that neither the theft nor the burglary in any way arose out of this incident of April 4th of 1977?

[560]

"A. No.

"Q. I mean, it is true that it does not?

"A. That is true.

"Q. So far as the incident of April 4th, 1977, you are not going to be prosecuted or convicted of anything in that incident; is that correct?

"A. That is correct.

"Q. One last thing. You have already pleaded guilty to that charge of burglary and theft, but you have not been sentenced; is that right?

"A. Yes.

"Q. Is it correct that your sentencing has been postponed until your testimony in this case?

"A. Yes."

On redirect examination the witness testified as follows over defendant's appropriate objection:

"Q. [By Prosecutor] I would like to talk a little about the deal that you and the State arrived at. You indicated in the course of cross-examination, you first spoke to Mr. Harris about this matter in March of 1979?

"A. (Nodding head in the affirmative.)

"Q. Had you been cooperative at all up to that point?

"A. No.

"Q. What precipitated your cooperation was a deal whereby you were to plead guilty to two crimes?

"A. Yes.

"Q. The two crimes that you pled guilty to were burglary and theft. Were you charged with committing those crimes together with anybody else?

"A. Yes.

"Q. Who else?

"A. Andrew Clark. [The defendant]"

■■ The general rule is that evidence of other crimes is inadmissible. *State v. Manrique,* 271 Or 201, 206, 531 P2d 239 (1975). The state, however, contends that this other crimes evidence was admissible because defendant "opened the door" on cross-examination and that the state was entitled to show

all the aspects of the negotiations. The state was entitled to complete the picture on redirect, if the defendant opened new areas on cross-examination. However, it is elementary that the state cannot inquire of defendant's other crimes if the only purpose is to blacken defendant's character. *State v. Smith,* 271 Or 294, 296, 532 P2d 9 (1975). The fact that defendant may have been involved with the witness in these other crimes had no relevance to any issue brought up by the defendant on cross-examination or to any issue of the trial. The evidence was inadmissible and it was prejudicial error to present it to the jury.

Because certain of the issues raised by defendant may arise on retrial, we will discuss defendant's other claims of error.

Defendant argues that the evidence was insufficient to establish that defendant "attempted use of a dangerous weapon undertaken with the intent of preventing resistance to the said defendant's taking of the two (2) kilos of marijuana," as charged in the indictment.[2]

The accomplice testified that defendant lit the "molotov cocktail" prior to entering the security office and that throwing it had been part of their plan. Another witness for the state testified that defendant told him that he had thrown the "molotov cocktail" but that it ricocheted off the desk and hit the security officer's foot. The witness then testified that defendant said he "just laughed thinking that it would have been nice if she would have burned up."

---

[2] ORS 164.415(1) provides:

"(1) A person commits the crime of robbery in the first degree if he violates ORS 164.395 and he:

"(a) Is armed with a deadly weapon; or

"(b) Uses or attempts to use a dangerous weapon; or

"(c) Causes or attempts to cause serious physical injury to any person."

[562]

■ The evidence was sufficient to go to the jury on the issue of whether defendant threw the "molotov cocktail," whether it was a dangerous weapon and whether it was intended to prevent the security officer's resistance to the theft.

■ Defendant also argues that the evidence was insufficient to go to the jury as to whether defendant used physical force upon the security officer with the intent of preventing her resistance as was charged in the second count of the indictment, ORS 164.405; 164.395.[3] The physical force alleged was the discharging of the chemical fire extinguisher at the officer.

An expert witness called by the state testified that the chemicals in the extinguisher could cause eye and throat irritation. The effective range of the extinguisher was twenty feet. The officer was approximately nine feet from the door when the defendant discharged the extinguisher at her. Another of the state's witnesses testified that defendant told him of how he "blasted" the security officer with the fire extinguisher. The chemical cloud presented a physical danger to the officer and when confronted with this dense cloud of yellow fog, the officer retreated, leaving the area unprotected.

Under these facts, the trial court properly submitted the issue of the use of physical force to prevent resistance to the theft to the jury.

---

[3] ORS 164.405(1)provides:

"(1)   A person commits the crime of robbery in the second degree if he violates ORS 164.395 and he:

"(a)   Represents by word or conduct that he is armed with what purports to be a dangerous or deadly weapon; or

"(b)   Is aided by another person actually present."

ORS 164.395(1)(a) provides:

"(1)   A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft he uses or threatens the immediate use of physical force upon another person with intent of:

"(a)   Preventing or overcoming resistance to his taking of the property or to his retention thereof immediately after the taking."

Prior to trial defendant moved for dismissal on the grounds that his constitutional rights were violated because he was not offered immunity as were several of his accomplices and that he was denied a post-indictment preliminary hearing. We disposed of these contentions in defendant's other appeal decided July 28, 1980. *State v. Clark,* 47 Or App 389, 615 P2d 1043 (1980).

Reversed and remanded for a new trial.

**THORNTON, J.,** dissenting.

Contrary to the majority, I do not view the testimony of the accomplice-codefendant, Roner, regarding defendant's participation with Roner in other crimes with which Roner was charged, as reversible error in the context in which it came into the case. Where defense counsel opened up the matter of Roner's having turned state's evidence in return for favorable treatment by the state on other charges, and having explored this deal extensively in cross examination, the state was entitled to show all aspects of that transaction. *See State v. Rowley,* 6 Or App 13, 485 P2d 1120, *rev den* (1971).

Nor do I feel that this testimony was as prejudicial to defendant as he now argues. After all, Roner had already testified without objection that several of the items used in the Security Office robbery had been stolen previously by the defendant.

Finally, the trial judge specifically instructed the jury that the testimony of an accomplice should be distrusted.

Considered in the light of the above circumstances, I do not believe that a new trial is warranted. As we indicated in *State v. Washington,* 36 Or App 547, 585 P2d 24, *rev den* 284 Or 341 (1978), the general rule is that adamissibility rulings by the trial court will not be disturbed on appeal unless an abuse of discretion is found. I find none here.