Argued and submitted June 23, 1980, resubmitted in banc March 4, affirmed March 9, 1981

# STATE OF OREGON,
## *Respondent,*
### *v.*
# JOSEPH JESS SCHNEIDER,
## *Appellant.*

### (No. C 78-12-20605, CA 16716)

625 P2d 150

Marilyn C. McManus, Deputy Public Defender, Salem, argued the cause for appellant. On the brief were Gary D. Babcock, Public Defender, and James E. Mountain, Jr., Deputy Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief

were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

GILLETTE, J.

Buttler, J., dissenting.

## GILLETTE, J.

Defendant appeals his conviction for unlawful possession of a controlled substance (methamphetamine), ORS 475.992, and unlawful possession of a weapon, ORS 166.250. We affirm.

The pertinent portions of the indictment are set out in the margin.[1] The major issues on appeal are the validity of the searches of defendant's person and the car which he had been driving. In discussing them, we relate the evidence as presented to the trial court at the hearing on the motion to suppress. Defendant was stopped by a police officer, accompanied by a trainee, for driving through a red light. When the officer signaled defendant to pull over, he noticed that defendant thereupon removed his right hand from the steering wheel, bent down and then quickly brought himself back up to the normal driving position. The officer testified that defendant appeared to converse with a passenger in the front seat. The passenger turned to look at the police car and then placed a jacket in the back seat. Defendant stopped and the officer and the trainee approached the car, one on either side. The officer noticed that the passenger wore a tee shirt displaying the emblem of the Gypsy Joker motorcycle club. The jacket that had been placed in the rear seat also bore a Gypsy Joker emblem. The officer claimed to know the club as a group whose members engaged in drug and weapons activity and in assaults on policemen.

---

[1] Counts I and II of the information provide:

*"COUNT I*

"The said defendant, on or about December 26, 1978, in the County of Multnomah, State of Oregon, did unlawfully and knowingly possess a controlled substance in Schedule II, to-wit: methamphetamine, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.

*"COUNT II*

"As part of the same act and transaction alleged in Count I herein, the defendant is accused by this information of the crime of UNLAWFUL POSSESSION OF WEAPON committed as follows:

"The said defendant, on or about December 26, 1978, in the County of Multnomah, State of Oregon, did unlawfully and knowingly carry concealed within a vehicle which was under his control and direction, a firearm capable of being concealed upon the person, to-wit: a revolver, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

The officer asked to see defendants driver's license and vehicle registration. As defendant thumbed through his wallet, the officer could see various pieces of identification bearing different names. Defendant produced a document bearing the name "Jack E. Neirsteimer." Having seen the different pieces of identification, the officer was "not at all sure" that the document defendant handed him correctly identified him.

The officer then asked defendant to step out of the car. He also asked defendant for proof of automobile insurance, which defendant could not produce. The officer escorted defendant to the police car and patted him down for weapons. The officer felt a lump in defendant's jacket and pulled out a brown paper bag. In the bag the officer found 48 empty small glassine envelopes, a type of package often used to package powdered drugs, and what appeared to be less than an ounce of marijuana. Defendant was then placed in the back seat of the police car. The officer asked defendant who owned the car, and defendant replied that it belonged to a friend. The officer then returned to the car defendant had been driving, where the trainee was talking with the passenger. The passenger complained of the cold and reached for his jacket, whereupon the officer removed the jacket from the car for him. The jacket was unusually heavy and the officer found inside it a loaded .357 magnum revolver. The officers placed the passenger under arrest, put him in the police car with defendant and then proceeded to search the car defendant had been driving. Under the front seat the officers found a glassine envelope containing a white powder which was later determined to be methamphetamine.

The officer testified that his intention in placing defendant in the police car was to "at least have him in the vehicle until I was able to run an Oregon operator's license status and find out if he was in fact suspended or else to find out why he was perhaps telling me a falsehood about his true identity." He stated that he placed defendant under arrest and advised him of his rights just prior to placing him in the back of the police car. He told defendant that he was under arrest for disregarding a traffic signal, not having an operator's license and failing to display proof of insurance. He added, "And then I also mentioned the fact

of his possession of less than one ounce of marijuana." The officer's testimony does not establish whether the search of defendant's person occurred before the arrest or later, at the time the officer added the charge of marijuana possession.

Defendant moved to suppress evidence of the glassine envelopes and marijuana seized from his person, the envelope of methamphetamine found in the car and the revolver taken from his passenger's jacket. The trial court concluded that defendant had no standing to challenge the search of the car and that the search of his person and seizure of evidence found on him was proper. For reasons which differ somewhat from those relied upon by the trial court, we agree.

Turning to the search of defendant's person and seizure of the glassine envelopes and marijuana, we note that the evidence at the hearing did not make clear whether the items were seized before or after defendant's arrest by the officer. Our decision does not depend upon the exact time of the search, however, for we conclude that the search was incident to an arrest which the officers had a right to make after searching the car. Explanation of our reason for so holding requires that we focus upon the search of the car.

The other items for which the defendant sought suppression were in the car. The state contended in the suppression hearing that defendant failed to show he had standing to challenge the search. "An illegal search only violates the rights of those who have 'a legitimate expectation of privacy in the invaded place,'" *United States v. Salvucci,* 448 US 83, 100 S Ct 2547, 65 L Ed 2d 619, 628 (1980), quoting *Rakas v. Illinois,* 439 US 128, 143, 99 S Ct 421, 58 L Ed 2d 387 (1978).

■    In the hearing on the motion to suppress, defendant did not assert either a property or a possessory interest in the car he was driving. He did not testify at the hearing, nor did anyone testify in his behalf. The only witness to testify was the arresting police officer. He testified that the car was towed because the police were responsible for their prisoner's property. We do not understand this necessarily

to mean that defendant had a property interest in the car. The only evidence which might be construed to support an expectation of privacy of defendant in the car's interior was the officer's testimony that defendant told him the car belonged to an unidentified friend. The trial court was not required to accept this hearsay statement, especially in the face of defendant's failure to produce any evidence of his own concerning standing. The trial court found that defendant had not established that he had standing to contest the search. The evidence supported that finding. The trial court's ruling denying defendant's motion to suppress the drugs found in the car was correct.

■ ■  Returning to the question of suppression of the items seized from the defendant's person, it can now be seen that, had the search of his person occurred *after* the search of the automobile, the search would have been lawful because the police would have had probable cause to arrest defendant and search him. *See State v. Florance,* 270 Or 169, 527 P2d 1202 (1974). We perceive no reason to make the chronology of the arrest/search dispositive. Whether the right to arrest preceded the search or followed it, as long as the right was closely connected in time to the search and was not itself the product of illegality, the fruits of the search should not be suppressed.

> "If probable cause for an arrest exists independent of evidence brought to light by the search, the fact that the search precedes the arrest does not render the search unreasonable nor destroy its character as an incident of the arrest. [citations omitted]" State v. Elk, 249 Or 614, 439 P2d 1011 (1968).[2]

The dissent ingeniously suggests an analysis based upon a statutory presumption which we might find more persuasive if (1) it had been suggested to the trial judge, or (2) it had been argued to us. However, defendant makes no argument in his brief concerning this theory. Neither does he suggest this argument was made below. Instead, he says in his brief,

---

[2] Because of the close connection in time between the search and the arrest, we are not here called upon to determine whether, in any event, we would be prepared to modify or abandon our view concerning the doctrine of "inevitable discovery," as discussed in *State v. Crossen,* 21 Or App 835, 536 P2d 1263 (1975), and uphold the seizure of these items on that theory, as well.

"At the outset of this argument, defendant acknowledges that this court's ruling in *State v. Emery,* 41 Or App 35, 597 P2d 375 (1979), appears to limit his ability to contest the search of the vehicle he was driving. At the hearing on this motion to suppress, the only evidence of ownership of the vehicle was the arresting officer's testimony the defendant said the car belonged to a friend."

Whatever may be the validity of the dissent's approach in a case in which the dissent's theory was both urged upon the trial court and argued here, it has no applicability in the absence of such factors.

■ The revolver was not seized as a result of the search of the car. It was seized upon being discovered in the passenger's jacket prior to the search of the car. Before handing an article of clothing to someone in circumstances such as these, an officer is entitled to pat down the article for his own protection and seize any weapon found. *See State v. Baron,* 42 Or App 273, 600 P2d 1232 (1979). The motion to suppress the revolver was properly denied.

■ In discussing the remaining assignments of error, we relate evidence as given on the trial. Defendant assigns as error the trial court's denial of his motion for judgment of acquittal of the unlawful possession of a weapon charge, made at the close of presentation of evidence by the state. He asserts that the state had not proved that defendant had knowledge of the revolver. The officer observed defendant conversing with defendant's passenger at the time the vehicle stop was made. The passenger then placed the jacket in the back seat. When the officer retrieved the jacket from the back seat for the passenger, the officer discovered the revolver in the jacket pocket. From these facts, a rational trier of fact could find beyond a reasonable doubt that defendant knew the revolver was in the car. *State v. Oare,* 249 Or 597, 439 P2d 885 (1968); *State v. Harris,* 288 Or 703, 609 P2d 798 (1980). The motion for judgment of acquittal was properly denied.

We now turn to defendant's other assignments of error which require discussion.

■ ■ Defendant claims the court erred in sustaining the state's objection to defendant's description of his prior convictions for rape and sodomy. Defense counsel asked,

"Give a description of the rape-sodomy case." The prosecution objected and the court sustained the objection. Defendant had been convicted of rape and sodomy as an accomplice, and he contends he should have been allowed to explain the circumstances of that conviction in order to lessen the impact of the disclosure of those convictions. A witness, including a defendant himself, may testify regarding any prior convictions and must be allowed to "briefly specify the charge for which he had been formerly convicted." *State v. Washington,* 36 Or App 547, 554, 585 P2d 24 (1978). However, defense counsel's request, that defendant give a description of the case, was too broadly stated and the trial court did not err in sustaining an objection to it.

■ Defendant also claims the trial court erred in overruling defendant's objection to the prosecutor's questions regarding a search of the Gypsy Jokers' clubhouse and the seizure of drugs there. On direct examination defendant testified that he was a member of the Gypsy Jokers and was subject to a club "law" prohibiting use of drugs by members. In his cross-examination the prosecutor asked defendant if it were not a fact that less than two months after defendant's arrest methamphetamines were found at the clubhouse during a search made pursuant to a warrant. Defendant raised the issue of the attitude of the club regarding drugs and the prosecution was thus entitled on cross-examination to attempt to impeach that testimony.

■ ■ Defendant further claims the trial court erred in overruling defendant's objection to police testimony that extra care was used in detaining defendant because other police officers had been injured by members of the Gypsy Jokers. The officer testified on direct examination:

"I noticed that at least one individual and perhaps both were, perhaps, affiliated with the Gypsy Jokers and inasmuch as from my personal experience and knowledge that there had been several officers injured by members of this club, I wanted to be a little careful and I asked for a backup unit to come join me, especially inasmuch as I had a trainee officer with me."

Defendant contends the testimony was irrelevant and unduly prejudicial to him, as it characterized defendant, and witnesses the state knew defendant planned to call, as "bad actors." In *State v. Hall,* 36 Or App 133, 583

P2d 587 (1978), we held that where at trial a defendant calls police conduct toward himself into question, he opens the door to admission of evidence of his own conduct, or other factors, that would explain the police conduct, thus making such evidence relevant. The negative implication of that holding is that where a defendant as in this case does not make a trial issue out of an officer's conduct toward himself, evidence of the officer's reasons for his conduct is irrelevant. Had the challenged testimony occurred *in vacuo,* therefore, we would agree with defendant that a new trial was necessary. However, where, as here, defendant himself later made the nature of the Gypsy Jokers an issue, we cannot say that there is any likelihood that the officer's testimony changed the result. *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973).

Affirmed.

**BUTTLER, J.,** dissenting.

Although I agree with the majority that evidence seized from defendant's person was properly admitted in evidence, defendant's motion to suppress evidence seized in the search of the automobile should have been granted. Further, I disagree with the majority's rationale for the arrest and search of defendant because it requires the conclusion that the automobile search was valid. That conclusion, in turn, is premised on defendant's lack of standing to challenge the search of the car. With that premise, and the resulting conclusion, I disagree, and therefore respectfully dissent.

The majority relies on *United States v. Salvucci,* 448 US 83, 100 S Ct 2547, 65 L Ed 2d 619, (1980), which overruled *Jones v. United States,* 362 US 257, 4 L Ed 2d 697, 80 S Ct 725, 78 ALR2d 233 (1960), with respect to the automatic standing rule adopted in *Jones* as applied to a search of real property. In *Salvucci,* the police had obtained a warrant to search an apartment rented by defendant's mother, and in executing the warrant had seized the evidence defendant sought to be suppressed. The rationale of the court in *Salvucci* is that if anyone's Fourth Amendment rights were violated, they were defendant's mother's rights. The mere fact that he put his personal property in his mother's home did not, without more, give him standing to

complain that his mother's premises were searched pursuant to an invalid warrant. That rationale has no application to the case at bar; as the court pointed out, in *Rawlins v. Kentucky,* 448 US 98, 100 S Ct 2556, 65 L Ed 2d 633 (1980) (decided the same day as *Salvucci),* "* * * Legal possession of a seized good is not a proxy for determining whether the owner had a Fourth Amendment interest for it does not invariably represent the protected Fourth Amendment interest." 65 L Ed 2d at 628. In other words, the fact of ownership of the goods seized does not *per se* establish a Fourth Amendment interest protected by the Fourth Amendment. The court went on to make this point specifically by referring to *Rakas v. Illinois,* 439 US 128, 99 S Ct 421, 58 L Ed 2d 387 (1978), which the court characterized as holding that "* * * an illegal search only violates the rights of those who have 'a legitimate expectation of privacy in the invaded place.'"

Here, it is not defendant's possessory or property interest in the goods that were seized which gives him standing; rather, it is his reasonable expectation of privacy in the invaded place, namely the automobile, which does so. The majority points out that the only evidence at the suppression hearing with respect to defendant's interest in the car was the officer's testimony that defendant had told him the car belonged to an unidentified friend, and that the car was towed because the police were responsible for their prisoner's property. That evidence, the majority holds, supports the trial court's finding that defendant had not established his standing to challenge the search.

There are times when we must fall back to basics in order to get our thoughts straight. This is such a time. I start with the proposition that if defendant was in lawful possession of the automobile, he had a reasonable expectation of privacy with respect to the passenger compartment, at least. The majority would say that it was his burden to establish that he was in lawful possession. Fair enough. But there are certain statutory presumptions which, while disputable, are satisfactory to establish the fact presumed. They may be controverted by other evidence, but unless so overcome, the fact finder is bound to find according to the presumption. ORS 41.360 provides:

"All presumptions other than conclusive presumptions are satisfactory, unless overcome. They are disputable presumptions, and may be controverted by other evidence, direct or indirect, but unless so overcome, the jury is bound to find according to the presumption. The following are of that kind:

" (1)   A person is innocent of crime or wrong.

"* * * * *

"(11)   Things in the possession of a person are owned by him.

"(12)   A person is the owner of property from exercising acts of ownership over it or from common reputation of his ownership.

"* * * * *."

It cannot be said that it was up to defendant to show that he had not stolen the automobile or was not guilty of unauthorized use of the automobile. He is presumed to have done neither of those things. Further, he was in possession of the automobile and was exercising acts of ownership over it, at least to the extent of operating it and keeping his personal property items in it. Unless those presumptions are overcome, and here they were not, the factfinder is bound to find in accordance with them. The officer's testimony that defendant told him the car belonged to a friend would overcome the presumption of defendant's ownership, but the majority say the trial judge did not have to believe that testimony. If it is not believed, the presumption would prevail; if believed, then defendant was using his friend's car, presumably with permission. There is no evidence to the contrary. We cannot have it both ways. Accordingly, it follows that the trial court's finding is not supported by the evidence.

I would hold, therefore, that defendant had standing to move to suppress evidence seized in the search of the automobile because he had a reasonable expectation of privacy with respect to the passenger compartment, at least. When we reach this conclusion, the house of cards starts to fall. The search was invalid because there was no warrant and no consent; even if there was probable cause, exigent circumstances were lacking once the police had arrested both defendant and his passenger, secured them in

the police car and arranged to tow the vehicle for impoundment. *State v. Fondren,* 285 Or 361, 591 P2d 1374 (1979); *cf. State v. Groda,* 285 Or 321, 591 P2d 1354 (1979).

All is not lost, however, because the seizure of the pistol from the passenger was justified, as the majority points out, for the officers' own protection. Once it was seized, the officers had probable cause to arrest defendant and the passenger, and the search of defendant, albeit sequentially confused, was inevitable as an incident to the arrest. Evidence seized as a result of that search need not be suppressed.

Because evidence seized in the unlawful search of the autmobile was not admissible, I would reverse.

Accordingly, I dissent.

Joseph, C. J., concurs in this dissent.